IN THE MATTER OF THE APPLICATION OF FREDERICK
W. SMIGELSKI FOR A WRIT OF *HABEAS CORPUS.*

IN THE MATTER OF FREDERICK WALTER SMIGELSKI.

Argued May 18, 1959—Decided August 3, 1959.

514

516

*Mr. Clive S. Cummis* argued the cause for appellant and respondent Smigelski (*Mr. Cummis,* attorney; *Mr. Raymond Del Tufo, Jr.,* of counsel).

*Mr. David M. Satz, Jr.,* Deputy Attorney General, argued the cause for appellant State of New Jersey and respondent Board of Managers, New Jersey Reformatory, Bordentown (*Mr. David D. Furman,* Attorney General of New Jersey, attorney; *Mr. Stephen F. Lichtenstein,* Deputy Attorney General, of counsel).

The opinion of the court was delivered by

HALL, J.   These consolidated appeals bring before the court again the question of the validity and duration of the continued confinement of one of those individuals originally convicted and sentenced in the criminal courts for murder committed prior to having attained the age of 1̃5 years and before the decision in *State v. Monahan,* 15 *N. J.* 34 (1954), which held jurisdiction over such an offense resided exclusively in the Juvenile and Domestic Relations Court. That *Monahan* did not automatically entitle such persons to release from imprisonment imposed under the law as it previously existed was determined in *Johnson v. State,* 18 *N. J.* 422 (1955), *certiorari* denied 350 *U. S.* 942, 76 *S. Ct.* 318, 100 *L. Ed.* 822 (1956). Smigelski, another of the very few so imprisoned when *Monahan* was decided, represents the question in a somewhat different factual and legal setting. The facts are not in dispute.

On September 12, 1947, when he was 14 years old, admittedly he feloniously killed another and was subsequently indicted for murder by the Hudson County grand jury. After a not guilty plea was entered, his motion to quash the indictment or to transfer the matter to the juvenile

court on the ground the latter tribunal had exclusive jurisdiction under the Juvenile Court Act was denied by the Court of Oyer and Terminer, and the denial upheld on appeal. *State v. Smigelski,* 137 *N. J. L.* 149 (*Sup. Ct.* 1948), appeal dismissed 1 *N. J.* 31 (1948). The appellate tribunals held, following *In re Mei,* 122 *N. J. Eq.* 125 (*E. & A.* 1937), that murder by a juvenile could not constitutionally be removed from the jurisdiction of the criminal courts despite statutory directions otherwise. Thereafter he changed his plea to *non vult* (*R. S.* 2:138–3, now *N. J. S.* 2A:113–3) and in January 1949, before he had become 16 years of age, was sentenced in the Court of Oyer and Terminer to a term of 25 to 30 years. Under the law as it then existed, there was no question but that the court had jurisdiction and the proceedings, conviction and sentence were entirely proper and regular.

*Monahan* was decided March 22, 1954, overruling *Mei.* On the strength thereof Smigelski, through the same experienced personal counsel who had represented him previously, promptly petitioned the court to vacate the plea and sentence. On June 29, 1954 (ten months before the decision in *Johnson*) the assignment judge so ordered, and further directed, assumedly over objection, that "the petitioner be proceeded against forthwith in the Juvenile and Domestic Relations Court of Hudson County, in accordance with the statute in such cases made and provided, and the petitioner remain in custody * * *." No statute of limitations on the offense had, of course, run. A transfer order was signed on August 21, followed by a formal complaint in the juvenile court charging him with delinquency by reason of the killing.

The hearing before the juvenile court judge was held on August 25, 1954 when the complaint was filed. At that time Smigelski was just over 21 years of age. (Institution records show his birth date as August 13, 1933. He claims to be a couple of months older. The difference is of no moment as we see it, even though on the basis of the record birth date he had not reached 21 when the law court ordered him

to be proceeded against in the juvenile court.) His counsel moved to dismiss the complaint for lack of jurisdiction in the court on the ground that such power did not extend over persons who had passed 18 years of age. The judge denied the application, holding the age when the act was committed and not that when the party is tried controls. No plea or contention of double jeopardy or *autrefois convict* was made. Smigelski then, saving his jurisdictional contentions, admitted the commission of the act and pleaded guilty to the charge of juvenile delinquency based thereon. He was remanded to Bordentown Reformatory pending the requisite investigation preparatory to disposition of the charge. On September 30, 1954 he was committed to the reformatory "for an indefinite term" and has since been confined there. Without a doubt the proceeding in the juvenile court met every requirement of constitutional due process from the procedural aspect.

In September 1956, after unsuccessfully seeking parole, he sought discharge from confinement by *habeas corpus,* claiming he was rehabilitated and had been unjustly denied parole by the reformatory board of managers. The writ issued and a hearing was held, at which Smigelski was represented by competent court-appointed counsel. The board denied he was yet fit for return to society even on parole, although there was no trial of the issue, since the court discharged the writ on the determination that *habeas corpus* did not lie to review alleged arbitrary action or abuse of discretion by a paroling authority, such being the proper subject only of an appeal to the Appellate Division under *R. R.* 4:88–8. No appeal was taken or further proceedings had along this line. It is to be noted that on this occasion it was not urged that the detention was invalid for lack of jurisdiction in the juvenile court, but on the contrary the validity of the commitment and confinement was expressly conceded.

Smigelski obtained another writ in 1958 on a complaint brought by his present assigned counsel (who are to be

commended for their conscientious and able presentation both in the trial court and on these appeals), charging unlawful imprisonment on the basis of lack of jurisdiction in the juvenile court in 1954 because he was then over the age of 21. A full hearing was held and the matter defended on behalf of the board of managers. The trial judge discharged the writ on the basis of the decision in *Johnson* (which had been handed down May 2, 1955). Smigelski appealed to the Appellate Division from the judgment.

After that appeal was taken, the State moved before the Juvenile and Domestic Relations Court to amend the commitment to conform to a 1957 amendment (*L.* 1957, *c.* 220) of *N. J. S.* 2*A*:4–37 relating to the duration of the confinement of a juvenile to be more fully referred to later. Smigelski opposed the application, and it was denied on the ground that the amendment was not retroactive in effect. The State appealed therefrom and the appeals were consolidated by the Appellate Division. We certified on our own motion before argument in the court. *R. R.* 1:10–1(*a*).

■ Considering first Smigelski's appeal from the discharge of the writ of *habeas corpus,* it is initially urged that the Juvenile and Domestic Relations Court has no jurisdiction over a person who first appears before it when over 21 years of age, even though the act of delinquency occurred before the age of 18, and so the commitment by that court was invalid and void. It is frankly conceded the contention is contrary to *Johnson* and a reversal of that decision is sought. We see no reason to depart from its conclusion here.

■ The question is involved both with the basic philosophy of the juvenile court and our own statutory provisions. The former is thoroughly discussed in *Monahan* and succinctly stated by Justice Brennan in *In re Lewis,* 11 *N. J.* 217, 224 (1953):

"* * * the statutory policy for the treatment of juvenile offenders is directed to their rehabilitation for useful citizenship through reformation and education and not to their punishment even when the offense underlying the adjudication of juvenile delinquency is

of a kind which when committed by an older person would merit indictment, conviction and punishment."

See also the policy declaration found in *N. J. S.* 2A:4-2. The judicial approach and kind of treatment should, of course, vary with the age of the delinquent, and that is made plain by our statutory scheme. Children under 16 have been legislatively declared incapable of committing a crime, *N. J. S.* 2A:85-4, and must be handled exclusively in the juvenile court. *Monahan* held this included murder, and such is the factual situation before us. Offending minors 16 or 17 years of age may be dealt with in that tribunal, but if the court finds that the person is an habitual offender or has been charged with an offense of a heinous nature "under circumstances which may require the imposition of a sentence rather than the disposition permitted by this chapter for the welfare of society," the matter is referred to the county prosecutor to "thereafter be dealt with in exactly the same manner as a criminal case." *N. J. S.* 2A:4-15. Also juveniles 16 and 17 may, at their option, demand indictment, trial by jury and treatment as adult offenders where the offense would be indictable if committed by one over 18. *N. J. S.* 2A:4-15. And where the treatment of the juvenile under the particular circumstances can, in the opinion of the court, be carried out only in an institution, the court may commit. *N. J. S.* 2A:4-37; *R. R.* 6:9-11. The commitment is not a "sentence," that term being confined to adult cases. If the institution must be a correctional one (and we have no state institutions for juveniles alone, other than the state home for boys and girls), the choice is controlled largely by the offender's age in the light of our statutory provisions prescribing age limitations for our various categories of custodial institutions. It would seem elementary that the kind of treatment and the place of custody should and will be governed by the age of the offender at the time of disposition in the juvenile court.

Our statutes make it clear that the Legislature did not intend the jurisdiction of the juvenile court to be

terminated or turned off like a faucet the moment a person who has committed an offense attains his 18th birthday, or that that event would necessarily preclude the acquisition and exercise of jurisdiction thereafter. *N. J. S.* 2A:4–17 provides that jurisdiction once acquired shall be retained during the continuance of a commitment or the term of probation, notwithstanding the child attained the age of 18 years during service of the commitment or the probationary period, and *N. J. S.* 2A:4–20 directs that if, during the pendency of a criminal charge, it appears that the person was under 18 at the time of committing the offense, the case should be immediately transferred to the juvenile court to be heard and disposed of as if originally instituted there. (The instant situation can be analogized to the latter.) While the Legislature has not otherwise spoken on this phase of the subject, it cannot be imagined that it was its intention that a juvenile offender should escape all judicial handling in the event he should not be apprehended until after he became 18. No other court could deal with an offense committed while the person was under that age, for the statute gives the juvenile tribunal exclusive jurisdiction except as has been noted. *N. J. S.* 2A:4–14. The matter is essentially legislative and the intention of that branch of government must control in the first instance. This is not to say that there may not be extreme cases in which the perpetrator of a juvenile offense escaped apprehension until late in life, when any purpose to be served by the juvenile court philosophy would have long since ceased to exist. But that is certainly not this case. We see no particular magic in age 21 in this respect as Smigelski appears to suggest. As far as that is concerned, adulthood for criminal purposes commences not at that age but at 18, and in a sense at 16 under *N. J. S.* 2A:4–15. *Monahan,* which involved the disposition of a juvenile before he had been dealt with by the criminal court, did not in any way intimate that a killing committed by one under 16 should be considered nonculpable because the perpetrator was originally dealt with

in a court found for the first time to be the wrong one. In the unusual and isolated situation created by that decision as to Smigelski, he was promptly handled by the tribunal which the decision declared to be the proper one. It would be most violative of public policy and contrary to the public welfare to say that a juvenile murderer should be set free under such circumstances when he had not been rehabilitated to the point where he could safely be turned loose on society. We conclude that age at the time of commission of the offense is ordinarily the determining factor as to jurisdiction in view of our statutory scheme and provisions, and that the Juvenile and Domestic Relations Court validly acquired jurisdiction over Smigelski for this offense under the particular circumstances present when the complaint was filed with it in August 1954.

■ Smigelski next contends that, even if the juvenile court had jurisdiction, its sentence to the reformatory, though "for an indefinite term," was legally limited to a five-year maximum, and so, since he has been imprisoned since September 1947, he is entitled to immediate release. It is claimed that the juvenile court derives its power to "sentence" from *R. S.* 30:4–148, as amended by *L.* 1951, *c.* 335, which provides in effect that the courts, in sentencing to the Bordentown reformatory, shall do so for an indeterminate period, but the time served therein or on parole shall not in any case exceed five years or "the maximum term provided by law for the crime for which the prisoner was convicted and sentenced," if such be less, unless the court imposes and the commitment specifies a sentence greater than five years but not exceeding the maximum for the crime. (Prior to the amendment, duration of confinement was limited only by the legal maximum term "for the crime" for which convicted and sentenced.) It is further provided that the term may be terminated by the board of managers in accordance with its rules and regulations.

We are of the opinion that this section has no bearing or effect on the duration of the confinement of those com-

mitted to the reformatory by the juvenile court, but rather that court's "sentencing" power is found in *N. J. S.* 2A :4–37. We do not consider a *dictum* in *In re Lewis, supra* (11 *N. J.* at *page* 225) and an intimation in *State v. Horton,* 45 *N. J. Super.* 44 (*App. Div.* 1957), to the contrary to be controlling otherwise, since the expressions were not necessary to the decisions. Section 148 must be read in the light of the one which precedes it, *R. S.* 30 :4–147, as amended, and of the fact that it is contained in *chapter* 4 of *Title* 30, entitled "Management, Control and Operation of Institutions in General." Section 147, captioned "Classes Committed," says that any male person between the ages of 16 and 30 may be committed to the Bordentown Reformatory "who has been convicted of a crime punishable by imprisonment in the State Prison." Similar provisions are found in the sections relating to the Annandale Reformatory (committable ages between 15 and 21) and the Women's Reformatory (minimum committable age, 16). *R. S.* 30 :4–152 and 155, both as similarly amended in 1951. The specific reference to crime, conviction and sentence indicates the intended application to those sentenced by the criminal courts and not to those committed by the juvenile court. Moreover, the comparable statutes relating to the State Home for Boys (committable age, 8 through 15) and that for girls (committable age, 8 through 16), where obviously only those committed by juvenile tribunals can be received, contain no such limitation, it being provided only that inmates may be detained in those institutions until the age of 21 (*R. S.* 30 :4–157.6 and 157.9). They may, however, be transferred to the reformatories prior to attaining that age. *R. S.* 30 :4–85, as amended.

The disposition power of the Juvenile and Domestic Relations Court specified in *N. J. S.* 2A :4–37, further detailed in some respects in *R. R.* 6 :9–11, permits placing the child on probation on suitable terms prescribed by the court, commitment to the State Board of Child Welfare and commitment (not sentence) to a public institution established for

juvenile offenders "or to any other appropriate institution" maintained by the State or county or "to any other like institution, commitment to which may be authorized by law." Prior to the 1957 amendment to be mentioned shortly, there was no stated limitation on the duration of the commitment. *Johnson* indicated duration was dependent on the board of managers of the particular institution, *i. e.,* that the period was indeterminate as a matter of law. (The provision in the instant commitment "for an indefinite term" might therefore be considered surplusage.) Such conforms to the underlying purpose of juvenile treatment previously referred to. Any statutory limitation was very likely thought to be of no practical importance prior to *Monahan* since commitment in juvenile cases other than murder is generally a last resort and detention usually extends only for a relatively short period. It would also appear obvious that the judge in the case at bar did not have any idea that his power of commitment to Bordentown was governed by section 148 and did not intend to necessarily limit Smigelski's continuing confinement to another five years. In our view, *R. S.* 30:4–148 does not apply to juveniles committed to the Bordentown Reformatory.

It is further contended that the original conviction for murder is a bar to the subsequent prosecution for the same offense as a juvenile delinquent on the theory of protection against double jeopardy or *res adjudicata.* The point is here made for the first time, it not having been asserted at the hearing in the juvenile court. Disregarding that fact and assuming that a later proceeding under the juvenile laws comes within the doctrine, we feel the contention has no merit. The defense is not available because by his own initiative Smigelski caused his previous plea and sentence to be set aside. Such conduct amounts to a waiver of a jeopardy plea. *In re Hall,* 94 *N. J. Eq.* 108 (*Ch.* 1922); 22 *C. J. S. Criminal Law* §§ 271, 277. It is analogous to a case where a defendant successfully appeals from a conviction. In such situations, the law is clear that the plea

is not available. *State v. Turco*, 99 *N. J. L.* 96, 104 (*E. & A.* 1923); *State v. Edelman*, 26 *N. J. Super.* 588, 593 (*App. Div.* 1953).

Finally, Smigelski contends that the conclusion in *Johnson* making him amenable to juvenile court action after his conviction had been set aside violates both federal and state constitutional guarantees against *ex post facto* laws. Apart from the fact that the prohibition generally pertains only to legislative acts and not judicial decisions (*Frank v. Mangum*, 237 *U. S.* 309, 344, 35 *S. Ct.* 582, 59 *L. Ed.* 969, 987 (1915)), we see no basis upon which he could be said to have standing to contest any possible illegality from retrospective application of *Johnson* or *Monahan* since, as has been pointed out, he relied on the latter decision to make successful his application to vacate the original plea and sentence in the Court of Oyer and Terminer.

The State's appeal from the denial of its application to amend the 1954 commitment in the juvenile court is based upon a claim of retroactive applicability of the 1957 amendment (*L.* 1957, *c.* 220) to *N. J. S.* 2A:4–37. As has been indicated, prior to the amendment that section contained no limitation on the duration of juvenile commitments. Occasioned by the holding in *Johnson* that such commitments had no maximum, as recited in the statement annexed to the bill, the amendment added a proviso that the time a child shall serve in confinement or on parole shall not extend beyond his 21st birthday, except that if the offense would constitute any form of homicide by one over 18, the period of confinement shall be indeterminate, and continue until the appropriate paroling authority determines the person should be paroled, but not in excess of the maximum provided by law for the offense if committed by one over the age of 18. The application in effect sought to have the particular degree of murder in this case determined and the commitment amended to specify the maximum term of confinement therefor as mentioned in the statute. The juvenile judge held that the statutory amendment applied

only to delinquencies occurring after its effective date of January 6, 1958.

It is fundamental that legislation is to have prospective application only unless a contrary intention is expressed or unavoidably implied. Here such an intention could only arise by inference, and such is not entirely clear from the text or the statement attached to the bill. There is sound authority, however, for the proposition that when a statute is ameliorative, as this one can be considered to be, it may be applied retroactively. *People v. Oliver,* 1 *N. Y.* 2d 152, 151 *N. Y. S.* 2d 367, 134 *N. E.* 2d 197 (*Ct. App.* 1956). The choice should rest, though, with the affected party, and applicability should not be compellable by the State. Here Smigelski opposed the application for reasons best known to himself, although it may be surmised that the opposition was based on a desire not to prejudice his pending appeal from the discharge of the writ of *habeas corpus.* He should have the right to make an application of his own for the same purpose if he desires to do so within a reasonable time from the date of filing of this opinion.

Whether or not such application is made and a definite maximum fixed, Smigelski must be released on parole as soon as the reformatory board of managers determines that he has been rehabilitated for useful citizenship under standards consonant with the philosophy of the treatment of juvenile offenders. See *In re Lewis, supra* (11 *N. J.* at *page* 224). Considerations of punishment or deterrence to others pertinent in deciding whether an adult criminal should be paroled have no place in the instant situation. Of course, if a maximum term is determined, detention cannot in any event exceed that limitation.

The responsibility of the board of managers in this type of case is a heavy one, both to society and to the prisoner. Since confinement here has already extended over about 12 years, during the greater part of which we presume there has been exposure to rehabilitative treatment, his status should be the subject of careful attention and periodic review at

reasonably short intervals. As was said in *State v. Wingler,* 25 *N. J.* 161, 181 (1957), "arbitrary or capricious action is impermissible and upon a sufficient showing of such conduct judicial relief will justly be afforded." The cited case dealt with confinement under the Sex Offender Act, which, in its provisions for commitment, treatment and release on parole, is in many ways analogous to the scheme intended by the philosophy and statutes pertinent to the handling of juvenile offenders, especially those where the offense was murder committed at an early age.

The judgment discharging the writ of *habeas corpus* and the order denying amendment of the commitment are affirmed, without costs.

*For affirmance*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, HALL and SCHETTINO—6.

*For reversal*—None.