STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. ROOSEVELT YOUNG, DEFENDANT-APPELLANT.

Argued May 9, 1978—Decided July 20, 1978.

*Mr. Stanford M. Singer,* Assistant Deputy Public Defender, argued the cause for defendant-appellant (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

*Mr. Robert E. Rochford,* Deputy Attorney General, argued the cause for plaintiff-respondent (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney).

PER CURIAM. The issues in this appeal are: (1) whether the "year and a day" common-law rule in murder cases has been the law of New Jersey to date; (2) whether the rule should now be abolished or altered judicially; and (3), if the answers to (1) and (2) are in the affirmative, whether such change in the law should be applied retroactively to the defendant, who shot his victim September 17, 1972, with resulting death on November 19, 1973, and was convicted of murder. The common-law rule held that "[i]n order also to make killing murder, it is requisite that the party die within a year and a day after the stroke received, or cause of death administered * * *." *Blackstone Commentaries,* Bk. IV*195.

The background facts in this case are stated in the Appellate Division opinion, 148 *N. J. Super,* at 407–408. Defendant was first indicted, prior to the victim's death, for assault with an offensive weapon and assault with intent to kill. After the death, defendant was indicted for murder. The indictments were tried together after defendant's motion to dismiss the murder indictment on the basis of the year and a day rule was denied. He was convicted of second degree murder and of each of the assault charges. The Appellate Division on appeal affirmed the murder conviction but merged the assault convictions with that for the murder. 148 *N. J. Super.* at 414. The court accepted defendant's contention that the year and a day rule became and remained a part of this State's common-law jurisprudence but it held that the rule could and should be abolished judicially because it "does not conform to present-day medical realities,

principles of equity or public policy." *Id.* at 412–413. The court further held that since defendant had not relied on the common-law rule when he committed his lethal assault on the victim it was not unjust to apply the abolition of the common-law rule to defendant retroactively. *Id.* at 413–414.

We granted certification. 75 *N. J.* 540 (1977).

Our consideration of the issues does not bring a majority of the Court to a single view both on the matter of retention, abolition or modification of the year and a day rule and as to the effect of any such determination on the judgment under appeal. Four members of the Court would abolish the rule, but three of them would make such an adjudication prospective only, and would reverse the affirmance of the conviction by the Appellate Division. The fourth of those members would affirm the judgment of the Appellate Division. Two members of the Court would retain the rule and accordingly reverse the appellate judgment. The seventh member would modify the common-law rule so as to extend the period from a year and a day to three years, but would so hold prospectively only.

Accordingly, the judgment of this Court is one of reversal of the judgment of the Appellate Division and remand to the trial court with directions to dismiss the indictment for murder and to reinstate the conviction and sentence for assault with intent to kill.[1]

██ We proceed to explain the conclusions of a majority of the Court to the effect that (1) the year and a day rule was the heretofore prevailing common-law rule in this State; and (2) its abolition or modification at the present time should not operate retroactively to incriminate this defendant for murder.

---

[1] We hold the conviction for assault with an offensive weapon to merge into that for assault with intent to kill. See *State v. Best,* 70 *N. J.* 56, 61–62 (1976) ; *State v. Jamison,* 64 *N. J.* 363, 380 (1974).

## I

There is no dispute between the parties that the year and a day rule was the common law of England prior to the adoption of the New Jersey State Constitution of 1776. The abundance and unanimity of authority on the point are manifest. *Blackstone Commentaries, op. cit. supra;* III *Coke, Inst.* 47, 53 (4th ed. 1662); 1 *East P. C.* c. 5, p. 214, 3 *Chitty, The Criminal Law* *726 (1819); 1 *Hawkins, P. C.* c. 13 at 92 (Curwood ed. 1824). The leading modern texts are in accord. *Wharton, The Law of Homicide,* § 60 (1938); 2 *Burdick Law of Crime* § 423 (1946).

The transition of the pre-Revolutionary common law of England to the present era in this State was accurately described by Justice Heher in his dissenting opinion in *Collopy v. Newark Eye and Ear Infirmary,* 27 *N. J.* 29, 48–49 (1958) as follows:

The common law of England has a constitutional basis in our jurisprudence. It was provided in the State Constitution of 1776, Section XXII, 'That the common law of England, as well as so much of the statute law, as have been heretofore practiced in this colony, shall still remain in force, until they shall be altered by a future law of the legislature; such parts only excepted, as are repugnant to the rights and privileges contained in this charter; * * *.' The 1844 Constitution ordained, Article X, Section I, that 'The common law and statute laws now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitation, or be altered or repealed by the legislature.' And the 1947 Constitution, Article XI, Section I, paragraph 3, declares that 'All law, statutory and otherwise, all rules and regulations of administrative bodies and all rules of courts in force at the time this Constitution or any Article thereof takes effect shall remain in full force until they expire or are superseded, altered or repealed by this Constitution or otherwise.'[2]

However, the State argues that the year and a day rule is not now a part of the common law of this State for two

[2] The views of the majority of the Court in *Collopy* were not to the contrary. See 27 *N. J.* at 43–45.

reasons. First, although no court in this State prior to this case ever expressly declared the rule non-existent here, we should hold it not to have emerged from the Constitution of 1947 because it is "anachronistic as a result of advances in medical technology and expansions in the admissibility of expert witnesses." Second, our statutory provisions concerning murder, *N. J. S. A.* 2A:113-1 and 2, altered and abrogated the common-law year and a day rule by omitting any reference thereto. The latter rationale was the basis for the rejection of defendant's motion to dismiss the indictment in the trial court. We agree with the Appellate Division's dismissal of these contentions.

As to the first point made by the State, it does not constitute a tenable argument that the year and a day rule was not transmitted to our current common law by virtue of the constitutional provisions cited in the excerpt quoted above from the dissent in Collopy, but rather a plea that the rule should now be abolished or altered. Whether or not the rule should be changed, it indubitably has persisted to the present day as the common law of England carried over by our several constitutions. See also *Greenspan v. Slate,* 12 *N. J.* 426, 433 (1953); *In re Vince,* 2 *N. J.* 443, 453 (1949); 2 *Schlosser, Criminal Laws of New Jersey* (3d ed. 1970) § 54:4 at 88.

The State's second point does not impress us. Many common law crimes and concepts have survived the enactment of this State's penal statutes. Our cases have consistently held that in enacting the murder statutes the Legislature created no new crimes but merely made distinctions, for the purpose of imposing different penalties between the most heinous and less aggravated grades of the crimes of murder. Thus, in *Graves v. State,* 45 *N. J. L.* 347 (E. & A. 1883), it was declared:

*That which was murder at the common law was, after the statute, still murder here,* but the most flagitious species was designated as the highest degree and visited with the extreme penalty while all others were declared to constitute a lower class and to be punishable

accordingly. When the Legislature, commendably simplifying the form of the indictment, provided that in charging the crime it should not be necessary to set forth the manner or means whereby the death was caused, but that it should be sufficient to charge that the defendant wilfully, feloniously and of his malice aforethought killed and murdered the deceased, it merely provided that *in a charge of murder, a crime well understood and well defined in the law, it should be enough to charge the crime in language sufficient to designate it.* [*Id.* at 358 (emphasis added)]

To the same effect see *Brown v. State,* 62 *N. J. L.* 666, 700 (E. & A. 1899), where the court stated that *L.* 1878, *c.* 235, § 107, created no new crimes but merely made a distinction with a view to the difference in punishment. As recently as *State v. Brown,* 22 *N. J.* 405 (1956), this construction was reaffirmed with regard to the current murder statutes, *N. J. S. A.* 2A:113–1; 113–2. The Court stated that these provisions

have not altered the nature of murder at common law; they are concerned only with the character of the punishment; the degrees do not constitute separate and distinct crimes, but merely grades of the same offense. Murder in either of the statutory degrees is murder at common law. [*Id.* at 412]

The conclusion that the early New Jersey murder statutes were intended only to set the punishment for crimes whose elements were to be filled in by resort to fixed common-law principles is borne out by the titles of the early criminal statutes, each of which was entitled "An Act for the Punishment of Crimes," see, *e.g., Pat.* 208, § 3 (1796); Rev. of 1846, *Nixon's Digest* at 161; *L.* 1898, *c.* 235, p. 791. The same purpose is apparent from the language of the respective statutes.

These considerations, coupled with the general principles that a statutory repeal of the common law will not be implied unless there is a clear repugnance between the common law and the statute, see *State v. Western Union Tel. Co.,* 12 *N. J.* 468, 486 (1953); *Clark and Marshall, Crimes,* § 1.08 at 48 (6th ed. 1958), and that penal statutes are to be

strictly construed, *e.g., State v. Meinken,* 10 *N. J.* 348, 352 (1952), suffice to demonstrate that the year and a day rule has not been abrogated by statute.

We conclude that the year and a day rule continued as New Jersey common law until and after the critical events in this case.

## II

Despite the fact that a majority of the Court believe that the year and a day rule should be abolished or modified, there is no majority in the Court for rendering any such determination effective retroactively so as to sustain the conviction of the defendant for murder.

In the first place, we regard the year and a day rule as a constituent element of the crime of murder, not a mere rule of evidence.[3] The rule does not create a rebuttable presumption of absence of causal relation between assault upon and death of the victim. The rule renders conclusive the absence of culpability for murder once the period of a year and a day has passed. That the rule may have evolved from early difficulties of proof of causal connection between assault and death remote in time from the assault, see III *Coke Inst.* c. vii at 53 (4th ed. 1670), does not derogate from the historic and present nature of the rule as one substantively immunizing the assaulter from liability for murder after lapse of the specified time. 3 *Stephen, History of the Criminal Law of England* at 7, 8 (1883), ("the law of England has laid down an arbitrary rule for criminal purposes on this subject. No one is criminally responsible for a death which occurs upwards of a year and a day * * * after the act by which it was caused.")

---

[3]We disagree with the contrary view taken in *Commonwealth v. Ladd,* 402 *Pa.* 164, 166 *A.* 2d 501 (Sup. Ct. 1960) ; *cf. People v. Snipe,* 25 *Cal. App.* 3d 742, 102 *Cal. Rptr.* 6 (Ct. App. 1972).

Defendant argues that to apply a judicial abolition or lengthening of the period of the year and a day rule to his case and consequently subject him to prosecution for murder would have the same effect as an *ex post facto* statute and constitute a denial of due process. The authorities support his position.

In *Bouie v. Columbia,* 378 *U. S.* 347,˙84 *S. Ct.* 1697, 12 *L. Ed.* 2d 894 (1964), a case involving an unforeseen and broadening judicial construction of a State criminal trespass statute, the Court held that as a matter of due process the state court could not apply its decision retroactively. It reasoned:

[A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law, such as Art I, § 10, of the Constitution forbids. An ex post facto law has been defined by this Court as one "that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action," or "that *aggravates* a *crime,* or makes it *greater* that it was, when committed." Calder v. Bull, 3 *Dall.* 386, 390, 1 *L. Ed.* 648, 650. If a state legislature is barred by the Ex Post Facto Clause from passing such law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction. Cf. Smith v. Cahoon, 283 *U. S.* 553, 565, 51 *S. Ct.* 582, 586, 75 *L. Ed.* 1264, 1273. The fundamental principle that "the required criminal law must have existed when the conduct in issue occurred," Hall, General Principles of Criminal Law (2d ed 1960), at 58–59, must apply to bar retroactive criminal prohibitions emanating from courts as well as from legislatures. If a judicial construction of a criminal statute is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue," it must not be given retroactive effect. Id., at 61. (emphasis in original) 378 *U. S.* at 353–354, 84 *S. Ct.* at 1702 (footnote omitted).

We believe the principle expressed in the foregoing decision is as fully applicable to the question whether a court altering a common-law criminal rule should allow its holding to render culpable as a given crime conduct which theretofore either was not a crime or constituted a crime of lesser degree. Illustrative is the decision in *State v. Koonce,* 89

*N. J. Super.* 169 (App. Div. 1965). The court there abolished the common-law rule of criminal law that a citizen could use force against a uniformed policeman in order to resist an illegal arrest. However, the court made its determination prospective only. It stated: "It is uniformly recognized that it would be fundamentally unjust to render criminal, by an overruling decision, conduct which was not criminal when it occurred." 89 *N. J. Super.* at 185. That language remains *apropos* in the present context notwithstanding defendant's conduct here was criminal when it occurred. As indicated in the *Bouie* case, *supra,* the inhibiting principle applies either where an innocent act would be rendered criminal or a criminal act would be rendered of greater or more serious consequence, by the subsequent judicial decision.

The indicated rationale is plainly applicable here. On September 18, 1973, the victim still alive, defendant was forever immune to prosecution for murder under the common law of New Jersey as it then stood. To render a present determination by this Court, abolishing the year and a day rule or extending the period thereof, effective to subject the defendant to liability for murder, would be fundamentally unfair in a jurisdiction devoted to the rule of law, if not offensive to concepts of due process, state and federal.

We are in disagreement with the Appellate Division's reasoning that the *Bouie* and *Koonce* rationale is unavailing to this defendant because he was not relying on the common-law year and a day rule when he shot his victim. Actual reliance by a defendant on the prexisting state of the criminal law is not a prerequisite to invocation of the principle under consideration. While foreseeability of consequences and fair warning to the public are sometimes considered part of the philosophical basis for the *ex post facto* and related due process principles, *cf. Bouie v. Columbia, supra,* 378 *U. S.* at 359–361, 84 *S. Ct.* 1697, those principles are operative entirely without regard to whether the defendant in the particular case actually relied on the prior state of the criminal

law at the time of the conduct in question. See *Dobbert v. Florida,* 432 *U. S.* 282, 292, 97 *S. Ct.* 2290, 53 *L. Ed.* 2d 344 .(1977), reh. den. 434 *U. S.* 882, 98 *S. Ct.* 246, 54 *L. Ed.* 2d 166 (1977), quoting the definition of an *ex post facto* law stated in *Beazell v. Ohio,* 269 *U. S.* 167, 169, 46 *S. Ct.* 68, 70 *L. Ed.* 216 (1925), which is devoid of any allusion to reliance by the defendant upon the prior law. It may also be noted that actual reliance by defendant on prior law was not a factor in the decision in *State v. Koonce, supra.*

The judgment of the Appellate Division is reversed and the case is remanded to the trial court with directions to dismiss the murder indictment and reinstate the conviction and sentence for assault with intent to kill.

CONFORD, P. J. A. D. (temporarily assigned), concurring. Although I would modify the year and a day rule to expand the period to three years, I agree with the reasons set forth in the Court's *per curiam* opinion against any retroactive abolition or modification of the rule to incriminate this defendant for murder.

In my view, the year and a day rule served a salutary purpose at common law. In the first place, as stated in III *Coke Inst.* c. vii at 53 (4th ed. 1670), it tended to weed out cases in which there was a probability that the ultimate demise of the victim was attributable to natural causes rather than to the remote assault. In the nature of things, the selection of an arbitrary period of time to settle remoteness was desirable, as otherwise difficult problems of proof as to causation could arise if death transpired five, ten or twenty years after the assault. Secondly, it would seem unjust and contrary to common expectations that a Sword of Damocles in the form of a potential prosecution for murder should hang over a defendant's head for years, particularly when he would long before have likely been prosecuted and convicted for the assault. See *Commonwealth v. Ladd,* 402

*Pa.* 164, 166 *A.* 2d 501, 519 (dissenting opinion of Musmanno, J.)

Notwithstanding the foregoing, the advance of medical science since the medieval era in which the year and a day rule originated suggests the desirability of extending the period substantially beyond a year and a day. Firstly, the ill or injured can be made to survive for longer periods of time. See *In re Quinlan,* 70 *N. J.* 10 (1976). Secondly, diagnostic skills relative to determination of causation have substantially improved. In view of these factors, too many felons who justly deserve prosecution for murder can escape such prosecution under the year and a day rule. The defendant before us may well constitute an example.

Yet the policy considerations mentioned earlier herein still cogently argue for a fixed period after assault within which death of the victim should be required to occur in order to constitute the original assault the crime of murder. Although medical expertise has vastly improved there could still be formidable evidential disputes, for example where a victim of an assault died ten or more years thereafter from pneumonia, as to whether there was sufficient causal connection between the assault and the death to turn the assaulter into a murderer. In my view it would be unfortunate to have to permit the issues in such a case to be resolved by the fortuitous reaction of a jury to opposing medical experts. A fixed time requirement between assault and death seems to me the most practicable expedient to minimize such predicaments, although it must be admitted that causation problems can still persist even when death does transpire within whatever time period is fixed by law.

Ideally, the Legislature should fix a time period for the indicated purpose or decide that no time period is necessary. Until that body chooses to resolve the matter, this Court, having the responsibility of adjusting the common law in the light of developing social policy, should act on the matter. A fair balance of all the pertinent considerations suggests

to me that the period should be fixed at three years.[1] I would vote for such a rule to be made effective prospectively.

SCHREIBER, J., concurring. The year and a day requirement has always been a substantive element of the crime of murder in this State, as the majority recognizes, and should have been applied to bar prosecution of this defendant for murder. Therefore, I concur in the judgment that the murder indictment should be dismissed and the conviction and sentence for assault with intent to kill reinstated. However, I part company with the majority when they eliminate the year and a day rule and substitute in its place a causation principle unlimited in time. I would defer to legislative action.

At common law, death within a year and a day was the controlling element which distinguished the crime of murder from that of assault. *Ball v. United States,* 140 *U. S.* 118, 134, 11 *S. Ct.* 761, 767, 35 *L. Ed.* 377, 384 (1890). Although the precise origins and purposes of the rule are obscure, see Cooley, "Constitutional Law" in *1960–1961 Survey of Pennsylvania Law,* 23 *U. Pitt. L. Rev.* 263 (1961), it most probably reflects an early judgment that proof of causation for the crime of murder should not be unduly speculative. See III *Coke, Inst.,* c. vii at 53 (4th ed. 1670) ("in case of life the rule of law ought to be certain").

Today, of course, it is easy to condemn the year and a day period as anachronistic and unjust. But, as the colloquy among my colleagues demonstrates, there is room for debate over what its substitute should be. Traditionally, such questions have been left to the Legislature, which — within constitutional limits — has the power to declare what conduct shall be criminal, to set the punishment for crimes, and to undertake substantive revisions of the criminal law.

---

[1] The California legislature chose a three year and a day period for this purpose. *West's Anno. Cal. Stat* (Penal) § 194 (1969).

The New Jersey Legislature is now in the process of revising and codifying New Jersey's criminal law, including murder. See proposed New Jersey Code of Criminal Justice approved by the Senate (S. No. 738) and Assembly (A. No. 3282).[1] The Code abolishes common law crimes, Title 2C, § 1–5. It defines murder in terms causing the death of another, Title 2C, §§ 11–2 and –3, and defines causal relationship between the conduct and the result. Section 2–3 of Title 2C states that "[c]onduct is the cause of a result when (1) [i]t is an antecedent but for which the result in question would not have occurred; and (2) [t]he relationship between the conduct and result satisfies any additional requirements imposed by the code or by the law defining the offense." The section then continues on to delineate causal relationship factors dependent on the nature of the offense. Title 2C, § 2–3(b), (c), (d) and (e).

Under all these circumstances, I am unable to perceive any compelling reason why this Court should not await final legislative action. The courts in most jurisdictions that have considered this question have deferred to their respective legislatures. *State v. Brown,* 21 *Md. App.* 91, 318 *A.* 2d 257 (Ct. App. 1974); *Elliott v. Mills,* 335 *P.* 2d 1104 (Okl. Crim. App. 1959); *Head v. State,* 68 *Ga. App.* 759, 24 *S. E.* 2d 145 (Ct. App. 1943); *State v. Dailey,* 191 *Ind.* 678, 134 *N. E.* 481 (Sup. Ct. 1922); *State v. Moore,* 196 *La.* 617, 199 *So.* 661 (Sup. Ct. 1940).[2]

I am aware of no case in which the highest court of a state, where a year and a day was a constituent element of the crime of murder, has abolished that criterion solely on the basis of inherent judicial authority to conform the com-

---

[1]There are some differences between the Senate and Assembly versions of the proposed code but they do not affect the sections referred to in this opinion.

[2]Subsequently, the Louisiana legislature enacted the year and a day requirement in its code. *La. Rev. Stat.* 14:29 (1974).

mon law to modern conditions. I do not mean to detract from our traditional power to revise and abandon common law principles when they are outdated and no longer serve justice or our obligation to scrutinize legislation or constitutional provisions in the light of their purposes. However, when the common law rule under examination is a substantive component of a major crime, when the selection of its substitute calls for policy determinations that are legislative in nature, and when the Legislature is in the process of making that decision, I believe we should stay our hand. For these reasons, I would adhere to the rule.

Justice SULLIVAN joins in this opinion.

CLIFFORD, J., concurring. I concur in the judgment of reversal and remand to the trial court for the purpose of dismissing the murder indictment and reinstating the conviction and sentence for assault with intent to kill. Likewise do I join in the *per curiam* opinion's determinations, and the reasoning supporting them, that (a) the "year and a day" rule was part of the New Jersey common law at the time of and after the critical events in this case, (b) the rule should be abolished, and (c) our decision should be applied prospectively. I write, however, to explain my hesitancy at having the Court formulate a rule establishing an extended but fixed time period in substitution for the "year and a day" rule.

The policy considerations supporting abolition of the "year and a day" rule are concisely set forth in Judge Conford's concurring opinion. *In re Quinlan,* 70 *N. J.* 10, *cert. den. sub nom., Garger v. New Jersey,* 429 *U. S.* 922, 97 *S. Ct.* 319, 50 *L. Ed.* 2d 289 (1976), teaches us, albeit in tragic context, that medical science is now able to sustain the critically afflicted for months and years beyond what might have been imagined only decades ago; and, as Judge Conford points out, there has been parallel progress in the development of diagnostic skills so that problems of medical causation are more readily resolved. So it is that science helps on

the one hand to prolong the victim's life and, on the other, to establish the causal relationship, if any, between the criminal's conduct and the victim's death. Hence it is clear that the "year and a day rule" has become a relic whose perpetuation would only impede the quest for justice.

But these very same considerations cause me not to share at all Judge Conford's apprehension about the injustice of "a Sword of Damocles in the form of a potential prosecution for murder [hanging] over a defendant's head for years * * *." One recalls that according to the legend the king seated Damocles at a feast beneath a sword hanging by a single hair in order to teach him a lesson — there, the perils in a ruler's life. While acknowledging that it may stretch the point to suggest that the state of uncertainty as to the victim's — and hence his own — fate contains a similar lesson for the assaulter, nevertheless I see nothing unjust in the perpetrator's being exposed over an indefinite period of time to the possibility of a murder prosecution. The same factors counseling abolition of the "year and a day" rule, namely, scientific advances which at once prolong life and allow the pinpointing of a causal relationship, between an assault and death, favor leaving open-ended the defendant's exposure to conviction for murder. After all, the conventional requirement of proof beyond a reasonable doubt continues to apply to every element of a prosecution for murder, and so the State must, despite the passage of time, satisfy a jury that that burden has been sustained on the issue of causal relationship. If the uncertainty of the outcome proves worrisome to the defendant, such are the fruits — and I suggest the *just* fruits — of his misdeed.

Even if, as a matter of public policy, it is desirable that a specific period be fixed, then that is a matter peculiarly appropriate for determination by the legislature rather than this Court. Indeed, I am unable to discover a single jurisdiction in which any court has made so bold as to substitute for the "year and a day" rule a different time period during which

death following an assault must occur in order for the crime to be murder. I presume to think this is so because every court which has given any thought at all to the question must readily have concluded that universally accepted principles of separation of powers dictate that this subject be addressed, if at all, by the legislature. I would leave it there, where it belongs.

Chief Justice HUGHES and Justice HANDLER join in this opinion.

PASHMAN, J., dissenting. Because of the mere fortuity that the unfortunate victim of this murder died one year and sixty-three days after being repeatedly shot, the Court has chosen to reward his assailant.[1] Had the victim's death been quick, the defendant's culpability for the crime of murder would have been unquestioned. However, here, where his end was far more tragic, the conviction is reversed. The three bullets that hit him rendered the decedent a permanent quadraplegic, paralyzed from the neck down. He was unable to do anything for himself save talking and thinking. He was shuffled from hospital to nursing home and back, as various complications and injury-induced infections plagued his day-to-day existence. The victim watched helplessly as his life slowly ebbed away over an extended period of time. Yet, the majority rewards his assailant by dismissing his indictment for murder simply because of the length of time it took for the debilitating injuries caused by the shooting to extinguish the victim's life. In essence, the majority allows the victim's valiant struggle for survival, even in the face

---

[1] Uncontradicted testimony of the medical examiner clearly established that the underlying cause of the victim's death was the gunshot wound to the cervical cord. He further stated that there was a direct causal relationship between the gunshot wound and decedent's death. The fact that complications resulting from his debilitated condition may have precipitated his death is, under settled legal principles, irrelevant to defendant's legal responsibility therefor.

of life as an invalid, to inure to the benefit of the defendant. Allowing a cold-blooded assailant to escape a murder conviction for such a hypertechnical reason mocks common sense and defies all rational notions of justice.

I agree with the *per curiam* opinion of the Court to the extent that it concludes that the "year and a day" rule was the heretofore prevailing common law rule in New Jersey. I also support the abolition of this now anachronistic rule and join in that part of Justice Clifford's well-reasoned concurring opinion which cogently demonstrates the ludicrousness of having any fixed time period as a substitute for the old rule. However, the only opinion to which I fully subscribe is that written by Judge Bischoff for the Appellate Division. 148 *N. J. Super.* 405 (1977).

Subjecting this defendant to a trial for murder is neither tantamount to prosecuting him under an *ex post facto* law nor violative of due process. It has been conclusively established that the constitutional provisions against *ex post facto* laws apply only to legislative enactments and have no application whatsoever on judicial decisions. *Marks v. United States,* 430 *U. S.* 188, 191, 97 *S. Ct.* 990, 992, 51 *L. Ed.* 2d 260, 265 (1977); *Frank v. Mangum,* 237 *U. S.* 309, 344, 35 *S. Ct.* 582, 594, 59 *L. Ed.* 969, 987 (1915); *In re Smigelski,* 30 *N. J.* 513, 526 (1959). In *Marks, supra,* the Supreme Court observed that

The *Ex Post Facto* clause is a limitation on the powers of the legislature . . . and does not of its own force apply to the Judicial Branch of government. * * * But the principle on which the clause is based — the notion that persons have a right to fair warning of that conduct which will give rise to criminal penalties — is fundamental to our concept of constitutional liberty.

[430 *U. S.* at 191, 97 *S. Ct.* at 992, 51 *L. Ed.* 2d at 265]

This Court has also stated that the *ex post facto* clause "generally pertains only to legislative acts and not judicial decisions." *In re Smigelski, supra,* 30 *N. J.* at 526. Yet even

assuming the constitutional restriction applied, this defendant did not lack fair warning that his lethal act of firing several shots at a vital area of his victim's body could subject him to a murder conviction if the wounds proved fatal.

Likewise, defendant's attempt to mount a due process challenge to retroactive application of our overruling of the year and a day rule is unconvincing. The correct analysis on this point was supplied by the Supreme Court of Pennsylvania in *Commonwealth v. Ladd,* 402 *Pa.* 164, 166 *A.* 2d 501 (1960). The Pennsylvania court abolished the year and a day rule and applied the abolition retroactively to the defendant in that case. It aptly noted that this ancient rule was essentially based on a judicial bar against the reception of evidence of death more than a year and a day after the assault. 166 *A.* 2d at 504, 506.

The rule does not change the legal concept of the facts of the case but only prevents process being had upon them under certain conditions. It should not be considered part of the definition of the crime any more than should the rule of venue . . . . It is clear . . . that the reason for the rule lay in the primitive state of medical knowledge at the time.

[166 *A.* 2d at 506]

Moreover, when California extended the year and a day rule to three years and a day, *West's Anno. Cal. Stat.* (Penal) § 194, a defendant who committed a murder prior to enactment of the statutory extention was held to be subject to prosecution even though the victim died 21 months after the assault. *People v. Snipe,* 25 *Cal. App.* 3d 742, 102 *Cal. Rptr.* 6 (Ct. App. 1972). That court also correctly found that the year and a day rule was evidentiary in nature, 102 *Cal. Rptr.* at 8, so that its alteration did not affect the nature of the offense or the punishment proscribed for that offense.

The year and a day rule is not substantive in any true sense of the word. It was adopted because the science of medicine was not sufficiently advanced in Seventeenth Cen-

tury England that it could pinpoint an injury inflicted long before death as the clear cause of death. Yet, the unlawful killing of a human being was just as much murder then as it is now. The difference is that modern advances in medicine allow us to pinpoint the cause of death with far greater precision. The United States Supreme Court's decisions have indicated that there is no constitutional infirmity to retrospective application of new evidence rules. See *Splawn v. California*, 431 *U. S.* 595, 97 *S. Ct.* 1987, 52 *L. Ed.* 2d 606, 613 (1977) ; *Thompson v. Missouri*, 171 *U. S.* 380, 18 *S. Ct.* 922, 43 *L. Ed.* 204 (1898) ; *Hopt v. Utah*, 110 *U. S.* 574, 4 *S. Ct.* 202, 28 *L. Ed.* 262 (1884).

The majority's reliance on *Bouie v. Columbia*, 378 *U. S.* 347, 84 *S. Ct.* 1697, 12 *L. Ed.* 2d 894 (1964) is misplaced. First, all the statements in that opinion pertaining to anything but the rendering of previously innocent conduct as culpable are mere *dicta*. Second, since no court in this state has ever before recognized the year and a day rule by statute or judicial decision, it is unimaginable that defendant relied on its existence in gauging his conduct. Third, the criminal law in New Jersey clearly proscribed the wrongful taking of a person's life by another at all times pertinent to this case. Moreover, the *Bouie dicta* were solely concerned with due process violation in the context of a statute or court decision operating in an *ex post facto* manner. The most recent Supreme Court discussion of the *ex post facto* clause is found in *Dobbert v. Florida*, 432 *U. S.* 282, 297, 97 *S. Ct.* 2290, 2300, 53 *L. Ed.* 2d 344, 358 (1977), where the majority suggests that fair warning is the central value protected by a rule of non-retroactivity in criminal law. Dean Cooley has put the reliance issue in the context of the year and a day rule to rest for all time.

[T]here is no such problem here. The defendant in this case could not have so regulated his blows as to ensure that his victim would die a month after the year-and-a-day barrier came into existence, nor should due process afford him a right to try. If the court is convinced that the ancient rule has outlived whatever rational basis

it once may have had, the asserted constitutional objections to saying so appear tenuous. Cooley, "Constitutional Law," 23 *U. Pitt. L. Rev.* 263, 265 (1961).

Even the views of the dissenters in *Dobbert,* which focused on the further need to protect against arbitrarily and improperly motivated legislative action, 432 *U. S.* at 307, 97 *S. Ct.* at 2305, 53 *L. Ed.* 2d at 365, would not be contravened by retroactive application of our abolition of this rule.

Furthermore I find no New Jersey decision which would stand in the way of applying the abolition of the year and a day rule retroactively. In *State v. Nash,* 64 *N. J.* 464, 471 (1974), Justice Clifford's opinion for the Court noted that as a general rule the decision over whether to give retroactive effect to a holding is based on pragmatic considerations, such as examining whether

. . . (1) the purpose of the rule and whether it would be furthered by a retroactive application, (2) the degree of reliance placed on the old rule by those who administered it, and (3) the effect a retroactive application would have on the administration of justice. This weighing process has generally been followed in New Jersey.

Retroactive application of our decision to this defendant would not be inconsistent with any of these considerations. It simply appears incongruous to cloak a mantle of protection around this defendant when he clearly committed the most heinous of crimes, a crime so abhorrent that it has no statute of limitations. *State v. Zarinsky,* 75 *N. J.* 101 (1977).

As we held in *In re Quinlan,* 70 *N. J.* 10, 44 (1976), "the law, equity and justice must not themselves quail and be helpless in the face of modern technological marvels presenting questions hitherto unthought of." Three hundred years ago it may not have been clear beyond a reasonable doubt that a defendant caused the victim's death when the decedent lived a year and sixty-three days after the assault. Today, in this case, it is clear. To permit this defendant to

avoid a murder conviction would be contrary "to the common moral judgment of the community at large." *In re Quinlan, supra.*

Perhaps the most ironic point of all is that if this offense had been committed three hundred years ago this defendant would have been convicted of murder and hanged. With the state of medicine at that time, nothing short of a miracle would have permitted a person shot in the places where this victim was hit to survive for a year and a day. Thus, modern medicine has prolonged the victim's life and adherence to an archaic legal fiction has freed his killer.[2] This is a result which I cannot countenance. I dissent.

HUGHES, C. J., and CLIFFORD and HANDLER, J. J., would abolish the rule prospectively; SULLIVAN and SCHREIBER, J. J., would retain the rule; CONFORD, P. J. A. D., would modify it and PASHMAN, J., would abolish the rule retroactively.

*For reversal*—Chief Justice HUGHES, Justices SULLIVAN, CLIFFORD, SCHREIBER and HANDLER and Judge CONFORD— 6.

For *affirmance*—Justice PASHMAN—1.

---

[2] The word free is used advisedly since we did reinstate defendant's conviction for assault with intent to kill. But, the 5–7 year sentence he received for that crime has been largely served. As a result of this decision, a possibly dangerous recidivist will soon be turned loose.