MARY WEITZEL GIBBONS, PLAINTIFF-RESPONDENT, v. FELTON LEWIS GIBBONS, DEFENDANT-APPELLANT.

Argued May 5, 1981—Decided July 8, 1981.

Alfred L. Ferguson argued the cause for appellant (*McCarter & English*, attorneys).

Richard L. Amster argued the cause for respondent (*Amster & Levin*, attorneys; *Richard L. Amster, Howard P. Danzig*, and *Nancy R. Lichtenstein*, on the brief).

The opinion of the Court was delivered by

PASHMAN, J.

*N.J.S.A.* 2A:34–23 authorizes the trial court in divorce actions to "make such award or awards to the parties, in addition to alimony and maintenance, to effectuate an equitable distribution of the property, both real and personal, which was legally and beneficially acquired by them or either of them during the marriage." On December 31, 1980, the Legislature enacted *L.* 1980, *c.* 181, which amended this statute by excluding from equitable distribution all property "acquired during the marriage by either party by way of gift, devise or bequest . . . except . . . interspousal gifts." In this case we must decide whether the provision of the statute excluding gifts, devises or bequests from equitable distribution is to be given retroactive application and thus governs this divorce action, which was instituted and tried, as well as heard in the Appellate Division, before the effective date of the amendment.

For the reasons below, we hold that the statute as amended should be given limited retroactive application and therefore governs this case. Consequently, we reverse the judgment of the Appellate Division, 174 *N.J.Super.* 107, which held that gift and inheritance assets of defendant Felton Lewis Gibbons were subject to equitable distribution, and remand the case to the trial court for determination of the proper distribution of the marital assets in accordance with our opinion.

I

Plaintiff Mary Weitzel Gibbons and defendant Felton Lewis Gibbons were married on November 15, 1952, shortly after their graduation from college. Following Felton's military service, both went to graduate school and Felton received a Ph.D. in 1961. Mary, however, terminated her graduate studies prematurely to care for the couple's two children who were in born 1957 and 1958.

After Felton received his degree, he was appointed an associate professor at Princeton University. The wealth of their respective families enabled Felton, Mary and their children to

live at a far higher standard of living than Felton's income alone would have permitted. In addition to their house in Princeton, the Gibbonses purchased real estate in Italy and Rhode Island. They also acquired an art collection. Most of the family's expenses were paid out of the income from gift or inheritance assets that Felton had received from his family. In addition, Felton set up trusts to pay for the children's educational expenses.

The couple began to experience marital difficulties in the early 1970's. Their continuing difficulties led to separation and then to the institution of this divorce action by Mary in August 1976. The parties ultimately agreed to proceed with the divorce on no-fault grounds and the case was tried in October 1978.

The trial court granted a dual judgment of divorce and order that the couple's joint assets, valued at $421,500, be divided equally. The court also valued the couple's gift and inheritance assets available for distribution,[1] held that these assets should likewise to be divided equally, and thus ordered Felton to transfer $575,000 to Mary.[2] Subsequently, the court modified its judgment to include equitable distribution of Felton's pension, with a resultant award of an additional $14,750 to Mary.[3]

Felton appealed the trial court's judgment to the Appellate Division. In a decision dated May 12, 1980 a divided panel

---

[1]The court valued these assets as follows: Felton, $2,167,000; Mary, $1,016,000.

[2]Initially, Mary had sought alimony but after the commencement of the action she dropped her alimony claim and sought only equitable distribution.

[3]Cases addressing the propriety of the equitable distribution of pensions are presently in conflict. See Kikkert v. Kikkert, 177 N.J.Super. 471 (App.Div.), certif. granted, 87 N.J. 353 (1981) (holding pensions equitably distributable); accord, Weir v. Weir, 173 N.J.Super. 130 (Ch.Div. 1980); contra, Mueller v. Mueller, 166 N.J.Super. 557 (Ch.Div. 1979) (pensions not subject to equitable distribution); McCarty v. McCarty, —— U.S. ——, 101 S.Ct. 2728, 68 L.Ed.2d —— (1981) (federal law governing military retirement pay precludes state court from dividing such pay in divorce proceedings pursuant to state community property laws).

affirmed the trial court's modified judgment. Two members of the panel believed that the trial court had properly exercised its discretion in dividing the couple's gift and inheritance assets equally as part of its equitable distribution of marital assets. One member of the panel dissented, expressing the following view:

> Although equitable jurisdiction over inherited and gifted assets is clearly desirable, ... it should be exercised only upon a finding that failure to do so will result in grossly disparate and unfair inequality, or some other manifest injustice.... Further, if distribution of such assets is ordered, it should not be in an amount greater than what is articulably related to what is needed to repair the inequity or relieve the injustice. [174 *N.J.Super.* at 123.]

Defendant, Felton Lewis Gibbons, brought the present appeal as of right, *R.* 2:2–1(a)(2), notice of which was filed on June 12, 1980.

On December 31, 1980 the equitable distribution statute was, as noted above, amended to provide that

> ... all ... property, real, personal or otherwise, legally or beneficially acquired during the marriage by either party by way of gift, devise or bequest shall not be subject to equitable distribution, except that interspousal gifts shall be subject to equitable distribution. [*N.J.S.A.* 2A:34–23 (Supp. 1981)]

According to the committee statement accompanying the amendment, the rationale for it was that

> in the majority of instances, the gift, devise or bequest in question will be from the parents or other relative of the recipient. To permit a compulsory division of the asset between the recipient and his spouse is contrary to the marital expectations of the recipient and the giving parent or relative. Since the efforts of neither spouse resulted in the gift, devise or bequest, it need not be regarded as a marital asset under the partnership concept of marriage. [*Senate Judiciary Committee Statement to Assembly, No. 1229 of 1980.*]

However, the amendment contained no indication as to whether it was to be applied to pending cases or only prospectively, and the legislative history offers no clear guidance on this point.[4] This lack of direction led the Governor to state, at the time he signed the bill into law, that because of the statute's silence on the question of retroactivity and the absence of a consensus in

---

[4] As originally introduced and passed by the Assembly, *A.* 1229 contained the following express disclaimer of retroactivity: "[T]his amendatory act does not apply to any judgment entered and any action for divorce or divorce from

the Legislature on the point, "I believe the courts are the more appropriate forum to resolve that issue. They will have to decide based on existing principles of law, the extent to which this new law will affect pending cases." We now undertake to resolve the retroactivity issue.

## II

█ The courts of this State have long followed a general rule of statutory construction that favors prospective application of statutes.[5] *E. g., Skulski v. Nolan*, 68 *N.J.* 179, 202 (1975); *La Parre v. Y.M.C.A. of the Oranges*, 30 *N.J.* 225, 229 (1959); *Kopczynski v. County of Camden*, 2 *N.J.* 419, 424 (1949); *Burdett v. Municipal Employees Pension Comm'n of Newark*, 129 *N.J.L.* 70, 72–73 (E. & A. 1942); *Weinstein v. Investors Savings and Loan Ass'n*, 154 *N.J.Super.* 164, 167 (App.Div. 1977). The rationale for this rule has been succinctly stated as follows:

bed and board filed prior to the effective date of this act." The Assembly Committee explained that the amendment "is not retroactive and does not apply to any judgment entered or any divorce action filed prior to the effective date of the act." *Assembly Judiciary, Law, Public Safety and Defense Committee Statement to Assembly, No. 1229 of 1980.* The Senate Judiciary Committee, however, deleted the disclaimer of retroactivity and explained that the effect of the deletion "was to make the provisions of Assembly Bill No. 1229 applicable to pending actions." *Senate Judiciary Committee Statement to Assembly, No. 1229 of 1980.* The Senate and Assembly passed the Senate Committee's version without further comment.

[5]By comparison, federal law on this issue, which had for decades been the same as New Jersey law, apparently has recently changed. Although the rule had been that "absent clear expression to the contrary, a statute is presumed to have prospective effect only," *Sikora v. American Can Co.*, 622 *F.*2d 1116, 1125 (3d Cir. 1980) (Adams, J., dissenting), recent Supreme Court decisions have led to the adoption of the following rule favoring retroactive application:

In cases pending at the time the law is changed, or filed thereafter, courts are now bound to apply the new law unless (1) there is a clear legislative directive to the contrary; or (2) to do so would cause manifest injustice to the party adversely affected by the change in the law. [*Id.* at 1128.]

*See Bradley v. School Board of Richmond*, 416 *U.S.* 696, 94 *S.Ct.* 2006, 40 *L.Ed.*2d 476 (1974); *Thorpe v. Housing Authority of Durham*, 393 *U.S.* 268, 89 *S.Ct.* 518, 21 *L.Ed.*2d 474 (1969).

It is a fundamental principle of jurisprudence that retroactive application of new laws involves a high risk of being unfair. There is general consensus among all people that notice or warning of the rules that are to be applied to determine their affairs should be given in advance of the actions whose effects are to be judged by them. The hackneyed maxim that everyone is held to know the law, itself a principle of dubious wisdom, nevertheless presupposes that the law is at least susceptible of being known. But this is not possible as to law which has not been made. [2 Sutherland, *Statutory Construction*, § 41.02 at 247 (4th ed. 1973) quoted in *Weinstein v. Investors Savings, supra*, 154 *N.J.Super.* at 167.]

▮ However, as we have said on at least one occasion, the rule favoring prospective application of statutes, while "a sound rule of statutory interpretation . . . is no more than a rule of statutory interpretation" and is not to be applied mechanistically to every case. *Rothman v. Rothman*, 65 *N.J.* 219, 224 (1974). Thus, there are well-settled rules concerning the circumstances in which statutes should be applied retroactively, where there is no clear expression of intent by the Legislature that the statute is to be prospectively applied only.

▮ First, there are those statutes in which the Legislature has expressed the contrary intent; *i. e.*, that the statute be applied retroactively. In such cases the court should, as Justice Schreiber has said, "apply the statute in effect at the time of its decision." *Kruvant v. Mayor of Cedar Grove*, 82 *N.J.* 435, 440 (1980). This expression of legislative intent may be either express, that is, stated in the language of the statute or in the pertinent legislative history, *e. g., Howard Savings Institution v. Kielb*, 38 *N.J.* 186, 193–94 (1962), or implied, that is, retroactive application may be necessary to make the statute workable or to give it the most sensible interpretation, *see Hohl v. Tp. of Readington*, 37 *N.J.* 271, 279 (1962) (amendments to zoning ordinances given retroactive effect because proper exercise of police power to further the public health, safety, morals or welfare outweighs private rights); *Borough of Little Ferry v. Bergen Cty. Sewer Auth.*, 9 *N.J.* 536, 547, *cert.* den., 344 *U.S.* 865, 73 *S.Ct.* 105, 97 *L.Ed.* 670 (1952) (nature of the dispute strongly suggested that Legislature intended amendment to apply to situation at issue).

In *Rothman v. Rothman, supra,* for example, we held that the equitable distribution statute should be retroactively applied because we were

> ... unable to believe that the Legislature intended its grant of power to undertake an equitable distribution of marital assets to apply solely to property acquired on or after the effective date of the act. Were this construction to be adopted, it would, in each case, become necessary to determine the date of acquisition of each asset acquired during marriage, often a difficult if not impossible task. A further question would arise should the particular property interest under consideration, though acquired after the effective date of the act, have been purchased with, or received in exchange for, money or other property owned before that date. Moreover, if [the statute were to be prospectively applied,] it has been estimated, apparently without exaggeration, that the full effect of the statute would not be felt for at least a generation. [65 *N.J.* at 223–24 (footnote omitted)]

Another category of cases in which we have held that statutes may be given retroactive application is that in which the statute is ameliorative or curative. *In re Smigelski,* 30 *N.J.* 513, 527 (1959); *see* 2 Sutherland, *Statutory Construction, supra,* § 41.11. In *Smigelski* this rule was applied to permit retroactive application of an amendatory statute that set limits to the duration of juvenile commitments. 30 *N.J.* at 526–27.

Finally, in the absence of a clear expression of legislative intent that the statute is to be applied prospectively, such considerations as the expectations of the parties may warrant retroactive application of a statute. *Cf. Westinghouse Elec. Corp. v. United Elec. Radio & Machine Workers of America,* 139 *N.J.Eq.* 97, 106 (E. & A. 1946) (retroactive application of amendment to anti-injunction act permissible because "the right to an injunction is a right in future"); 2 Sutherland, *Statutory Construction, supra,* § 41.05 at 261.

However, even if a statute may be subject to retroactive application, a final inquiry must be made. That is, will retroactive application result in "manifest injustice" to a party adversely affected by such an application of the statute? The essence of this inquiry is whether the affected party relied, to his or her prejudice, on the law that is now to be changed as a result of the retroactive application of the statute, and whether the conse-

quences of this reliance are so deleterious and irrevocable that it would be unfair to apply the statute retroactively. *See Bradley v. School Board of Richmond, supra*, 416 *U.S.* at 716–17, 94 *S.Ct.* at 2018–19, 40 *L.Ed.2d* at 491; *Thorpe v. Housing Auth. of Durham, supra*, 393 *U.S.* at 282, 89 *S.Ct.* at 526, 21 *L.Ed.2d* at 484; *Sikora v. American Can Co., supra*, 622 *F.2d* at 1128–29 (Adams, J., dissenting). *Cf., Kruvant v. Mayor of Cedar Grove, supra*, 82 *N.J.* at 442 (declining to apply an ordinance retroactively where it would be inequitable to do so in view of conduct of party seeking retroactive application).

■ Applying these principles to the statute at issue in the present case, we conclude that the amendment to *N.J.S.A.* 2A:34–23 should be applied retroactively. Consequently, it applies to this case and all other cases presently on direct appeal or in which a final judgment has not been entered. *See Bellinger v. Bellinger*, 177 *N.J.Super.* 650 (Ch. Div. 1981) (applying amended version of *N.J.S.A.* 2A:34–23 to case tried after the effective date of the amendment).

As a preliminary matter, there is no clear expression of legislative intent that the amendatory statute be applied prospectively. Indeed, it can even fairly be inferred from the legislative history that the Legislature intended the amendment to apply retroactively. *Supra* at 520–521 n.4.

Furthermore, the exceptions to the rule of prospectivity weigh in favor of retroactive application. First, the amendment in question, like that in *Smigelski, supra,* is curative insofar as it reflects the Legislature's attempt to improve a statutory scheme already in existence. Second, retroactive application will bring the law into harmony with the settled expectations of many donors and donees. As was noted by the Senate Judiciary Committee in the legislative statement quoted above, "[t]o permit a compulsory division of [gift or inheritance assets] between the recipient and his spouse is contrary to the marital expectations of the recipient and the giving parent or relative." *Senate Judiciary Committee Statement to Assembly, No. 1229 of 1980.* In view of this legislative statement, giving the statute retroac-

tive application will fulfill the essential purpose of retroactivity, "to effectuate the current policy declared by the legislative body." *Kruvant v. Cedar Grove, supra,* 82 *N.J.* at 440.

Nor will retroactive application of the statute result in manifest injustice to the adversely affected party, in this case, Mary Weitzel Gibbons. She claims that it is inequitable to apply the amended statute to her because she relied upon the law as it existed at the time she brought her action. In particular, she says she chose to seek equitable distribution only and not alimony as well because of what she believed was the broad scope of assets subject to equitable distribution. But clearly no manifest injustice will result from retroactive application of the amendatory statute to her case since any orders pertaining to alimony or other support "may be revised and altered by the court from time to time as circumstances may require," *N.J.S.A* 2A:34–23. *See Lepis v. Lepis,* 83 *N.J.* 139, 145–49 (1980).

Accordingly, we reverse the judgment of the Appellate Division and remand this case to the trial court for determination of the correct equitable distribution in accordance with the statute as amended.

*For reversal and remandment*—Chief Justice WILENTZ, and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*For affirmance*—None.