STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
JOSEPH HUGHES, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted January 29, 1985—Decided March 1, 1985.

174

Before Judges MICHELS, PETRELLA and BAIME.

*Joseph H. Rodriguez,* Public Defender, attorney for appellant (*Donald V. Sutton,* Designated Counsel, of counsel and on the brief).

*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney for respondent (*Jane A. Grall,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

MICHELS, P.J.A.D.

Tried to a jury, defendant Joseph Hughes was convicted of armed robbery in violation of the provisions of *N.J.S.A.* 2A:141–1 and *N.J.S.A.* 2A:151–5 (Second Count), assault with intent to commit robbery while armed in violation of the provisions of *N.J.S.A.* 2A:90–2 and *N.J.S.A.* 2A:151–5 (Third Count), five counts of assault with an offensive weapon in violation of the provisions of *N.J.S.A.* 2A:90–3 (Sixth, Seventh, Eighth, Ninth and Tenth Counts), five counts of assault with intent to kill while armed in violation of the provisions of *N.J.S.A.* 2A:90–2 and *N.J.S.A.* 2A:151–5 (Sixteenth, Seventeenth, Eighteenth, Nineteenth and Twentieth Counts), false imprisonment in violation of the provisions of *N.J.S.A.* 2A:85–1 (Twenty-First Count), unlawful possession of a shotgun without having first

obtained a firearms purchaser identification card in violation of the provisions of *N.J.S.A.* 2A:151–41 (Twenty-Fourth Count) and unlawful use of a dangerous and deadly weapon in violation of the provisions of *N.J.S.A.* 2A:151–56 (Twenty-Sixth Count). The trial court merged defendant's conviction for the unlawful use of a dangerous and deadly weapon (Twenty-Sixth Count) into his convictions for assault with intent to kill while armed (Sixteenth, Seventeenth, Eighteenth, Nineteenth and Twentieth Counts) and further merged these convictions with his convictions for assault with intent to commit robbery while armed (Third Count) and assault with an offensive weapon (Sixth, Seventh, Eighth, Ninth and Tenth Counts). Defendant, who elected to be sentenced under the provisions of *Title* 2A rather than *Title* 2C, was then sentenced to State Prison for consecutive and concurrent terms aggregating 32 to 41 years. He appeals.

Defendant seeks a reversal of his convictions on the following grounds set forth in his brief:

POINT 1 DEFENDANT'S CONVICTION MUST BE REVERSED AS A FAIR TRIAL WAS DENIED IN THE ESTABLISHMENT OF A JURY PANEL.

POINT 2 THE COURT COMMITTED PLAIN ERROR IN ITS CHARGE TO THIS JURY OF SUCH A NATURE THAT IT PREJUDICIALLY AFFECTED APPELLANT'S SUBSTANTIAL RIGHTS TO A FAIR TRIAL.

POINT 3 DEFENDANT'S CONVICTION MUST BE REVERSED AS MISTRIAL REQUEST WAS IMPROPERLY DENIED.

POINT 4 THE STATE FAILED TO LAY A PROPER FOUNDATION FOR INTRODUCTION OF PREJUDICIAL EVIDENCE AND THE COURT ERRED IN ALLOWING INTO EVIDENCE SAID PREJUDICIAL ITEM.

POINT 5 DEFENDANT'S CONVICTION ON COUNT TWENTY–FOUR OF THE INDICTMENT i.e., FAILURE TO OBTAIN A PERMIT AND POSSESSION OF A FIREARM SHOULD HAVE BEEN SET ASIDE BY THE TRIAL COURT.

POINT 6 APPELLANT'S CONVICTION ON COUNT TWENTY–FOUR OF THE INDICTMENT SHOULD HAVE BEEN MERGED.

POINT 7 DEFENDANT'S CONVICTIONS AND SENTENCING FOR ASSAULT WITH INTENT TO KILL AND ARMED ROBBERY MUST BE REVERSED AS THE STATE FAILED TO PROVE THE ELEMENTS OF SAID CRIMES BEYOND A REASONABLE DOUBT.

We have carefully considered these contentions and all of the arguments advanced by defendant in support of them and find that they are clearly without merit. *R.* 2:11–3(e)(2).

However, some further comment is necessary with respect to defendant's claim in Point 1, *supra*, that his conviction must be reversed because he was denied a fair trial in the establishment of the jury panel. The essential thrust of defendant's argument is that the Jury Commissioners for Hudson County (Commissioners) failed to include the driver's licenses list in the composite list from which jurors were to be chosen as required by *N.J.S.A.* 2A:70–4. Defendant argues that *N.J.S.A.* 2A:70–4, as amended, became effective July 3, 1980 and therefore applied to the jury selection for his trial which commenced on September 9, 1980. We disagree.

*N.J.S.A.* 2A:70–1, which deals with jury lists provides, that:[1]

> The jury commissioners of each county shall, at least 40 days prior to the commencement of each stated session of the Superior Court in their county, make two lists, alphabetically arranged and consecutively numbered, of persons liable to jury duty, having regard to the just distribution of jury service among those persons qualified therefor in the various wards and municipalities of such county. The lists shall state their occupation and places of abode, showing their respective municipalities and wards, if any, in municipalities, and shall be designated respectively the "grand jury list" and the "petit jury list." The number of persons named on the grand jury list shall at no time be less than 125 nor more than 500, to be determined by the assignment judge of the Superior Court for the county. The number of persons named on the petit jury list shall at no time be less than 250, the number to be determined by such assignment judge. A copy of each list shall be delivered forthwith to such assignment judge. The board of chosen freeholders of any county by resolution may provide for the purchase and use of the jury commissioners of the county electromechanical devices commonly designated automatic business machines with punch cards and card sorting machines.

Defendant's trial occurred during the September 1980 session which began on September 8, 1980. Therefore, pursuant to *N.J.S.A.* 2A:70–1 the petit jury list had to be completed no later than July 30, 1980. This is 27 days after *N.J.S.A.* 2A:70–4 became effective.

*N.J.S.A.* 2A:70–4 [Amended by *L.*1979, *c.* 271, § 1] provides:

---

[1] *N.J.S.A.* 2A:70–1 was amended by *L.*1980, *c.* 7, § 1, effective March 7, 1980. The only changes consisted of the use of the word "two" rather than the numeral "2" and an increase in the maximum number of persons on the grand jury list from 300 to 500.

> For the purpose of making up the jury lists, the jury commissioners shall have access to and may copy registry lists of the several municipalities and election districts of their county and lists, which shall be compiled by the Division of Motor Vehicles, of the names and addresses of the holders of motor vehicle driver licenses who are residents of their county. The commissioners shall use these lists to compile a single list from which all jurors shall be selected.

The plain intent of the revision of *N.J.S.A.* 2A:70–4 is to ensure that the jury commissioners use the list of holders of motor vehicle driver licenses "[f]or the purpose of making up the jury lists." The Legislature, which is assumed to be "thoroughly conversant with its own legislation. . . .", *Brewer v. Porch*, 53 *N.J.* 167, 174 (1969), chose an arbitrary date for the amendment to the statute to become effective, *i.e.,* "6 months following enactment", *L.*1979, *c.* 271, § 3, rather than specifying a particular court session (after approval) for which compliance would begin. It is therefore reasonable to assume that the Legislature understood and approved the fact that in some instances juries would be selected after July 3, 1980 from jury lists which were required to be compiled prior to July 3, 1980.

Jury selection is an ongoing process regulated by statute. The statutory scheme for jury selection ties the selection process to the commencement date of each stated session of the Superior Court. *See N.J.S.A.* 2A:70–1; *see also N.J.S.A.* 2A:70–2 and *N.J.S.A.* 2A:70–3. In this regard, Michael A. Casserly, the Director of Jury Management for Hudson County (Director) testified that this process takes anywhere from four to six months. The process for the September 1980 session began in May, 1980 with the sending of questionnaires to an unspecified number of people in Hudson County. The list of people to receive questionnaires came from the voter registration lists only because the list of holders of valid drivers' licenses was not received until July 27 or 28, 1980, which was at least 24 days after the amendment became effective. The Commissioners then compared the responses to each questionnaire against the statutory requirements for jury service and compiled a master prospective juror list. This prequalification list of approximately 8,000 names was then presented to the

Assignment Judge in Hudson County sometime prior to July 27, 1980 and was used to select the jury panel for Hudson County for the stated term commencing in September 1980 and running to December of 1980.

Furthermore, necessity required that the Director begin making up the lists prior to July 3, 1980 if the "petit jury list" was to be compiled by July 30, 1980. The Director needed a list of 8,000 names with the respective addresses and occupations by the latter date. In order to meet this requirement the questionnaires had to be sent out as provided by *N.J.S.A.* 2A:70–5. The Director in devising a time-table to follow in "making up of the jury lists" had to allow enough time for the mailing of the questionnaires, their completion by the recipients, their return, the sorting of the thousands of returns and finally the actual drafting of the list in alphabetical order from which defendant's jury was eventually chosen. Thus, the questionnaires by necessity were sent out in May, 1980.

The Director further testified that the drivers' licenses list was not sent directly to Hudson County. Rather it went through the Administrative Office of the Courts which had arranged with the Division of Motor Vehicles to provide the required lists. In preparing the master prospective jury list for the September 1980 session without the use of the drivers' licenses lists, the Director testified that he relied in part on a directive to all Assignment Judges from Robert D. Lipscher, Administrative Director of the Courts, dated May 13, 1980, which in pertinent part, read as follows:

> This is to advise you of decisions affecting the implementation of revised *N.J.S.A.* 2A:70–4 regarding the mandated merger of the voters' and drivers' registration lists. Several issues have been considered.
>
> * * * * * * * *
>
> The issue of the effective date has also been considered. We are taking the position that it would be an overwhelming job to implement the statute on the "short" effective date. The DMV has stated that it would be technically impossible to deliver the county lists prior to July 1. Indeed, the legislature is only requiring that the qualification process be in accordance with the statute after July 3, 1980. Therefore, some juries empanelled after July 3, 1980 will have to be selected under the old law.

In view of the undisputed fact that the preparation of the jury list was such a time consuming process, it is perfectly clear that the Legislature, in providing an arbitrary effective date for the amendment to *N.J.S.A.* 2A:70-4, could not have intended to make invalid the final product of processes which began legally under the former statute. To do so would in effect make the present amended statute retroactive in application and we cannot conceive that our Legislature intended such a result. Moreover, statutes are generally given prospective application. *Gibbons v. Gibbons*, 86 *N.J.* 515, 521 (1981). "[R]etroactive application [is neither] necessary to make [*N.J. S.A.* 2A:70-4] workable [nor] to give it the most sensible interpretation...." *Id.* at 522. And while it is "ameliorative or curative", *Id.* at 523, since the Legislature failed to tie it to a particular court session, we do not believe that that nature alone compels its retroactive application. Rather, the amendment to *N.J.S.A.* 2A:70-4 should be applied prospectively to juries the "making up" of which began after July 2, 1980. Consequently, we hold to the view that the amendment to *N.J.S.A.* 2A:70-4 cannot be applied in a retroactive manner.

Accordingly, defendant's convictions and the sentences imposed thereon are affirmed.