In re S. RACHLES, INC., a New Jersey corporation, Debtor.

OFFICIAL UNSECURED CREDITORS' COMMITTEE, Plaintiff,

v.

Frances A. RACHLES, Defendant.

Francis X. FERRARA, Interim Trustee, Plaintiff,

v.

Frances A. RACHLES, Defendant.

Bankruptcy No. 88–00106 (NLW). Adv. Nos. 90–2027, 90–2065.

United States Bankruptcy Court, D. New Jersey.

June 6, 1991.

Ravin, Greenberg & Marks, P.A., Roseland, N.J. by Allan M. Harris, for Frances X. Ferrara, Interim Trustee.

Lehman, Wasserman, Jurista & Stolz, P.C., Millburn, N.J. by Scott P. Albergate, for Frances A. Rachles.

## OPINION

NOVALYN L. WINFIELD, Bankruptcy Judge.

Frances X. Ferrara, the Chapter 7 Trustee ("Trustee") brings this matter before the Court by way of a motion, pursuant to Bankruptcy Rule 7042, to consolidate the following adversary proceedings: Frances X. Ferrara, Interim Trustee v. Frances A. Rachles, Adversary No. 90–2065 and Official Unsecured Creditors' Committee v. Frances A. Rachles, Adversary No. 90–2027.

Frances A. Rachles ("Rachles") responded with a cross-motion to dismiss the Official Unsecured Creditors' Committee ("Creditors' Committee") adversary proceeding and an opposition to the Trustee's motion to consolidate. Additionally, Rachles filed a separate motion to dismiss portions of counts three and four of both adversary proceedings as time barred.

The Court has considered oral argument by counsel for the parties, the pleadings and legal memoranda submitted, and makes the following findings of fact and conclusions of law as required by Bankruptcy Rule 7052. Both adversary proceedings are concerned with matters that are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(F) and (H), and this Court has jurisdiction in accordance with 28 U.S.C. § 1334 and Standing Order of Reference dated July 23, 1984.

### FINDINGS OF FACT

1. S. Rachles, Inc. ("Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on January 7,

1988. At the time that it commenced its case the Debtor was engaged in business as a wholesale distributor of newspapers and periodicals.

2. On February 29, 1988, the United States Trustee formed an Unsecured Creditors' Committee, which selected the firm of Ravin, Greenberg and Zackin as its counsel.

3. In its Schedules of Assets and Liabilities and Statement of Financial Affairs, filed on June 22, 1988, the Debtor identifies Dorothy Rachles as President and Treasurer. Louis Rachles is listed as owner of 515 shares, Class A non-voting stock and the Estate of Daniel Rachles is listed as owner of 100 shares, Class B voting common stock, and 25 shares, Class B non-voting stock. Frances Rachles is not listed as a stockholder. However, she is listed as an unsecured creditor in the amount of $341,-421.00 on Schedule A–3.

4. The Chapter 11 case was converted to a case under Chapter 7 by order of Chief Judge Vincent J. Commisa, dated January 24, 1990. On January 24, 1990 the Assistant U.S. Trustee appointed Frances X. Ferrara, Esq. as the interim case trustee. The Trustee selected Ravin, Greenberg and Zachkin as his counsel, and their retention was approved by order of the court dated February 2, 1990.

5. During the Chapter 11 case, the Creditors' Committee filed an adversary proceeding against Frances Rachles alleging that certain transfers from the Debtor to her constituted preferences and/or fraudulent transfers. No court authorization was obtained prior to filing the complaint. The Trustee's counsel states in his certification in support of the motion to consolidate that he filed the adversary proceeding without seeking leave of court because he was concerned that if he did not act the statute of limitations would run with respect to certain claims. However, the motion seeking court authorization was filed with the complaint, and was made returnable on January 29, 1990. Because Judge Commisa converted the Chapter 11 case to a Chapter 7 case on January 24, 1990, the motion was not heard and no further action was taken with respect to the Creditors' Committee complaint until the motion to consolidate was filed.

6. On February 7, 1990, the Chapter 7 Trustee filed an adversary proceeding setting forth allegations and claims identical to those enumerated in the Creditors' Committee complaint.

7. The complaints allege claims against Rachles in the nature of voidable preferences under Bankruptcy Code § 547 (Count One), fraudulent conveyances under Bankruptcy Code § 548 (Count Two) and fraudulent transfers pursuant to Bankruptcy Code § 544 and the Uniform Fraudulent Transfer Act ("UFTA"), N.J.S.A. 25:2–20 to 2–34 (West Supp.1990), as well as the Uniform Fraudulent Conveyance Act ("UFCA"), at N.J.S.A. 25:2–7 to 2–19, *repealed* by N.J.S.A. 25:2–34 (Counts Three and Four).

8. The first transfer that the Creditors' Committee and the Trustee claim was fraudulent occurred on January 22, 1986, when the Debtor, through its President Daniel Rachles, paid $100,000.00 from its funds to Rachles. The Creditors' Committee and Trustee claim that the Debtor received no consideration in return for its payment.

9. The second transfer claimed as fraudulent involved a stock redemption agreement concluded between the Debtor and Rachles on February 2, 1987. Under this agreement, the Debtor redeemed 450 shares of non-voting preferred stock and 65 shares of Class A non-voting common stock for $450,000.00. The stock redemption agreement indicates that the Debtor paid $100,000.00 to Rachles as of the date of the agreement. The Trustee alleges that further payments totalling $31,950.00 were made from March 12, 1987 through November 30, 1987, and that such payments not only constitute preferences, but are subject to attack as fraudulent transfers.

10. In her answer to the Trustee's complaint, Rachles admits receipt of the January 22, 1986 payment of $100,000.00, as well as the $31,950.00 paid over the period March 12, 1987 to November 30, 1987. However, Rachles denies the payment of

$31,950.00 should be characterized as "payment on the agreement for the redemption of her stock in the Debtor." Defendant's Answer to Adversary Complaint, First Count, at ¶ 6. Rachles admits the creation of the stock redemption agreement and the redemption of her shares pursuant to such agreement, but somewhat cryptically claims that the transaction was "a component of a larger transaction" and that pursuant to the "overall transaction" Rachles transferred to the Debtor her interest in real property the value of which she alleges to be in excess of the payments received from the Debtor. *Id.* at first Count, ¶ 4.

11. The Trustee filed a motion, returnable March 4, 1991, to consolidate the two adversary complaints brought by the Creditors' Committee and the Trustee. At a hearing on March 4, 1991, Judge Tuohey, concerned about statute of limitations questions in these adversary proceedings, directed counsel for Rachles to file a motion to dismiss those portions of the complaints which Rachles claimed were barred by statute of limitations defenses.

12. On May 20, 1991, this Court heard oral argument regarding the Motion to Consolidate and the Motion to Dismiss certain portions of the adversary proceedings.

## DISCUSSION

### A. Consolidation

Counsel for the Trustee filed a motion pursuant to Bankruptcy Rule 7042 to consolidate the Trustee's adversary proceeding with the Creditors' Committee adversary proceeding out of a concern that the filing of the Trustee's complaint on February 7, 1990, may have been untimely with respect to some of the causes of action it alleges.

■ By its plain language, the purpose of Bankruptcy Rule 7042 is to avoid the unnecessary expense and delay of separate proceedings where such proceedings involve a common question of law or fact. Consolidation under Bankruptcy Rule 7042 does not effect substantive consolidation so as to merge separate adversary proceedings into a single adversary proceeding. Rather, for reasons of judicial economy, Rule 7042 permits two or more proceedings to be heard at the same time. Thus, the Trustee's attempted use of the rule would appear to be inconsistent with its purpose. Even if consolidation is permitted, the Trustee's potential problem persists: the Trustee's complaint may still be untimely.[1]

■ Resolution of the Trustee's dilemma can be found in Bankruptcy Rule 7025, which makes Federal Rule of Civil Procedure 25 applicable to adversary proceedings. As set forth in subsection (c) of the rule, when a transfer of interest occurs the action may be continued by or against the original party, or upon motion, the court can direct that the transferee of the interest be substituted or joined with the original party. One of the examples cited in the Editors' Comment to Bankruptcy Rule 7025 to illustrate an appropriate substitution of parties is the substitution of the Chapter 7 trustee for the debtor-in-possession when a case converts from Chapter 11 to Chapter 7. Norton Bankr.Rules Pamphlet, Editors' Comment to Rule 7025, at 515 (1990–91 ed.). Upon conversion and appointment, a trustee steps into the shoes of the debtor-in-possession with respect to all rights, responsibilities and liabilities. Logically then, it is entirely appropriate for the Chapter 7 Trustee to be substituted as plaintiff in the instant adversary proceeding in the place of the Creditors' Committee which initially filed the adversary complaint on behalf of the Debtor and this estate. Upon submission of appropriate motion papers, this Court will readily entertain a request for substitution of plaintiffs.

---

**1.** The Creditors' Committee is without counsel to prosecute its adversary proceeding. Upon conversion of the case, Debtor's counsel (Ravin, Greenberg & Zackin) became counsel to the Trustee. Counsel cannot now represent both entities. Moreover, it is commonly accepted that upon conversion the Creditors' Committee becomes largely inactive because the duties of the Trustee under section 704 of the Bankruptcy Code encompass the functions that would otherwise be undertaken by a Creditors' Committee, and it is costly for the estate to bear the burden of duplicative services.

## B. Retroactive Approval For Creditors' Committee to Institute an Adversary Proceeding

■ Rachles contends that the Creditors' Committee complaint is fundamentally and fatally defective because the court did not first authorize the filing of the complaint. While it is true that courts have generally held that leave of court must be obtained before commencement of proceedings filed on behalf of the Debtor, *see, e.g., In re STN Enterprises,* 779 F.2d 901, 904 (2d Cir.1985), it does not follow that retroactive approval cannot be granted where an adversary proceeding has been commenced without such authorization. Noting that "the overall 'fairness' concept of the bankruptcy laws mandates that the debtor's transactions should not pass without examination," the court in *In re Jones,* 37 B.R. 969, 974 (Bankr.N.D.Tex.1984), gave *nunc pro tunc* approval to a creditors' committee to challenge pre-petition transfers of a debtor under sections 547 and 548 of the Bankruptcy Code.

This Court agrees with the court in *Jones* that pre-petition transactions of a debtor should not go without scrutiny simply because a creditors' committee failed to seek leave of court prior to instituting an adversary complaint. The underlying rationale for permitting a creditors' committee to commence an adversary proceeding on behalf of a debtor is that the estate and its creditor body should not be deprived of the benefit of meritorious causes of action simply because the debtor could not or would not undertake such actions. *In re Monsour Medical Center,* 5 B.R. 715 (Bankr.W.D.Pa.1980).

In the instant proceeding, recognizing that the statute of limitations was running, the Creditors' Committee filed an adversary proceeding on January 3, 1990 and simultaneously filed a motion made returnable January 29, 1990, seeking authorization from the court to proceed with the adversary proceeding. Prior to the return date of the motion, the case was converted to Chapter 7. Following the conversion, rather than proceeding with the motion, counsel for the Creditors' Committee, who subsequently became counsel to the Trustee, commenced a second adversary proceeding on February 7, 1990, with the Trustee as plaintiff. Counsel apparently believed that the Trustee's complaint was timely filed as to all actions alleged, and thus took no further steps with respect to the Creditors' Committee adversary proceeding. While one might wish that the Creditors' Committee had recognized the potential statute of limitations problem earlier, nonetheless their counsel proceeded so as to preserve the causes of action for the estate.

■ It would be inequitable to deny retroactive approval of the filing of the Creditors' Committee complaint. If successful, a recovery will benefit the unsecured creditors. The Court must exercise its equitable powers within the confines of the Bankruptcy Code and may neither create new substantive rights nor contravene existing sections of the Bankruptcy Code. *In re Continental Airlines Corp.,* 907 F.2d 1500, 1509–10 (5th Cir.1990). In the instant case, the exercise of the Court's equitable powers merely results in preservation of the judicially created and recognized right of creditors' committees to institute actions on behalf of debtors.

## C. Applicability of UFTA to Transfers Made Prior to its Effective Date

The UFTA became effective in New Jersey on January 1, 1989, repealing and replacing the Uniform Fraudulent Conveyance Act in New Jersey. *See* N.J.S.A. 25:2–34. The UFTA, as adopted by New Jersey, requires a cause of action brought under Section 25:2–27(b) to be filed within one year after the transfer was made. N.J.S.A. 25:2–31(c). The UFCA, as adopted by New Jersey, did not contain a statute of limitations.

Rachles argues that neither the UFTA action filed by the Creditors' Committee nor the Trustee's UFTA action is timely. Rachles states that the rule in this District is that when a new statute creates a limitations period for instituting a cause of action where the previous statute had no period of limitations, the period begins to

run, as to pre-existing claims, on the effective date of the new statute. *T & E Industries, Inc. v. Safety Light Corp.*, 680 F.Supp. 696 (D.N.J.1988) (citing *Sohn v. Waterson*, 84 U.S. (17 Wall.) 596, 599, 21 L.Ed. 737 (1873)); *United States v. Morena*, 245 U.S. 392, 38 S.Ct. 151, 62 L.Ed. 359 (1918); *Reuther v. Trustees of the Trucking Employees of Passaic and Bergen County Welfare Fund*, 575 F.2d 1074, 1078 n. 4 (3d Cir.1978); *Superior Engraving Co. v. National Labor Relations Board*, 183 F.2d 783, 789 (7th Cir.1950), *cert. denied*, 340 U.S. 930, 71 S.Ct. 490, 95 L.Ed. 671 (1951). The Third Circuit has noted that this doctrine, known as the *"Sohn* rule" after the leading case, "still enjoys great viability." *Reuther*, 575 F.2d at 1078 n. 4.

Utilizing the *Sohn* rule, Rachles contends that the statute of limitations for the fraudulent transfer actions began to run on January 1, 1989, the effective date of the statute. As a result, January 1, 1990 was the latest possible date a UFTA action could have been commenced. Since the Creditors' Committee adversary proceeding was commenced January 3, 1990 and the Trustee's adversary proceeding was filed February 7, 1990, Rachles argues that both complaints are untimely with respect to the UFTA counts alleged.

In response, the Trustee counters that the rule set forth in *Sohn* has not been adopted by the courts of New Jersey, but is rather a rule relating to the construction of federal statutes. In the event this Court is not persuaded that the *Sohn* rule only relates to federal statutes, the Trustee argues alternatively (i) that the tolling provision found in 11 U.S.C. § 108(a) extends the time to bring the UFTA action until two years from the filing of the bankruptcy petition;[2] (ii) that the "equitable tolling

doctrine" permits the continuation of the cause of action under the UFTA;[3] and (iii) that N.J.S.A. 1:1–11 preserves the right to institute a fraudulent transfer action under the UFTA.

The Court is persuaded that neither the Creditors' Committee nor the Trustee has an action under the UFTA. However, in reaching its determination the Court focuses not on the statute of limitations contained within the UFTA, but on the larger question of whether the UFTA may be applied to transfers that were made prior to its effective date, January 1, 1989.

One court has already held that the New Jersey version of the UFTA is inapplicable to a transfer which occurred prior to January 1, 1989. *In re Fleet*, 122 B.R. 910, 915 (Bankr.E.D.Pa.1990). Other courts construing other states' versions of the UFTA have also found their respective state enactments of the UFTA inapplicable to transfers occurring prior to the effective dates of the statutes. *See In re Smith*, 110 B.R. 597, 598–99 (Bankr.M.D.Fla.1990); *In re Martin*, 113 B.R. 949, 956 n. 2 (Bankr.N.D.Ill.1990). These courts have primarily relied on the rule of statutory construction that statutes are generally applied prospectively only. *See United States v. Security Industrial Bank*, 459 U.S. 70, 79–80, 103 S.Ct. 407, 413, 74 L.Ed.2d 235 (1982).

For example, in *Martin*, the court addressed state law fraudulent transfer causes of action brought against a debtor as a result of a stock transaction. There, a debtor made gifts of stock in a family-owned corporation in which he was president and had a minority interest, to his children for no consideration. The court

---

**2.** Section 108(a) provides:

   If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—
   
   (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
   
   (2) two years after the order for relief.

*Id.* at § 108(a).

**3.** The equitable tolling doctrine is intended to prevent a party from committing a fraud and then concealing that fraud until such time that it may plead the statute of limitations to protect itself. *White v. Boston*, 104 B.R. 951, 956 (S.D.Ind.1989) (discussing *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 349–50, 22 L.Ed. 636 (1875)), *cert. denied*, —— U.S. ——, 110 S.Ct. 1471, 108 L.Ed.2d 609 (1990).

had to determine whether to apply the UFTA or the predecessor state fraudulent conveyance statute. Since there was no indication in either the UFTA itself or its legislative history that it should apply to transfers that occurred prior to its effective date, the *Martin* court applied the statute in effect at the time of the debtor's gift to his children. *Martin*, 113 B.R. 949, 956 n. 2.

In reaching its decision, the *Fleet* court relied upon the decision of the New Jersey Supreme Court in *Gibbons v. Gibbons*, 86 N.J. 515, 521–25, 432 A.2d 80, 83–84 (1981). *Gibbons* states that in New Jersey it has long been accepted that statutes are to be construed as prospective only, but then articulates three exceptions to the "prospective only" rule:

(1) the statute expressly states that it shall apply retroactively; or

(2) the statute is curative or ameliorative; or

(3) the parties expect retroactive application of the statute.

*Gibbons*, 86 N.J. at 522–23, 432 A.2d 80.

The *Fleet* court found the first exception inapplicable because New Jersey's version of the UFTA is silent as to whether it applies to transfers which occur prior to its effective date. *Fleet*, 122 B.R. at 915. The *Fleet* court also found the second alternative inapplicable because the UFTA was not enacted merely for curative or ameliorative purposes, but "overhauled the UFCA in numerous substantive aspects." *Id.* Finally, the *Fleet* court held that the parties should have expected that court to decide the case under the UFCA because an earlier decision in that case was made under the UFCA.

This Court agrees with the reasoning used by *Fleet* with regard to the first two exceptions set forth in *Gibbons*. Further,

the Court finds that it is unlikely that any of the parties to this bankruptcy case, or for that matter any parties to commercial transactions in the state of New Jersey, had any expectations regarding the voidability of transfers in fraud of creditors that were not already met by the UFCA. In *Gibbons*, the Court determined that amendment of the New Jersey divorce statute so as to exclude gifts (other than interspousal), devises, and bequests from the marital property subject to equitable distribution should be applied retroactively. The Court reasoned that such application would give effect to the expectations of many donors and donees who did not contemplate that their gifts or bequests would be subject to compulsory division between the recipient and the spouse. *Gibbons*, 86 N.J. at 524, 432 A.2d 80. No such overriding concerns are at stake with respect to the UFTA.

■ This Court concurs with the reasoning in *Fleet* and *Martin* that the UFTA may only be applied prospectively. Since each transfer in the present case occurred before January 1, 1989, the effective date of New Jersey's version of the UFTA, the UFTA is inapplicable to those transfers. Therefore, the Court need not reach the Trustee's section 108 and equitable tolling arguments because the Trustee has no cause of action on which to extend the time to file an adversary complaint under either section 108 or the equitable tolling doctrine.

■ The Trustee's argument that N.J.S.A. 1:1–11, New Jersey's general savings statute, preserves his right to institute a fraudulent transfer action under the UFTA misunderstands the purpose of that statutory provision.[4] N.J.S.A. 1:1–11 preserves rights vested in statutes and precludes the repeal of a statute from affecting rights possessed under that statute.

---

4. N.J.S.A. 1:1–11 provides:
   The repeal, by the enactment of
   a.  the Revised Statutes,
   b.  the New Jersey Statutes, or
   c.  any other revision law,
   of any statute or part of any statute, shall not in any way affect, impair or invalidate any act done or right or limitation vested or accrued, or any bonds issued, or taxes or assessments of any

kind levied or imposed, or any tax sale had, or in any way annul, invalidate, take away, impair, limit, disturb or affect any right, title, estate, privilege, immunity or power or conveyance in, to or of either real or personal property, acquired, given, conferred, had or made under or by virtue of, or validated by, any statute or part of any statute so repealed.
N.J.S.A. 1:1–11 (West Supp.1990).

What N.J.S.A. 1:1–11 does not accomplish is the transformation of rights vested in a repealed statute to rights vested in a newly enacted statute. An example of the appropriate use of N.J.S.A. 1:1–11 is found in *State, Department of Environmental Protection v. Exxon Corp.*, 151 N.J.Super. 464, 376 A.2d 1339 (Ch.Div.1977). There, the New Jersey Department of Environmental Protection brought an action against a manufacturing corporation in which it alleged nuisance and violation of N.J.S.A. 58:10–23.11 *et seq.*, a state statute proscribing the discharge of petroleum products into New Jersey waters. While the case was proceeding, the New Jersey Legislature repealed N.J.S.A. 58:10–23.1 *et seq.*, and replaced it with the Spill Compensation and Control Act. N.J.S.A. 58:10–23.11 *et seq.* ("Spill Act"). The court held that:

> "N.J.S.A. 1:1–11 which preserve[s] the rights vested in the State under N.J.S.A. 58:10–23.1 *et seq.*.... indicate[s] that rights created by statute such as the State's right under N.J.S.A. 58:10–23.1 *et seq.* to abate water pollution allegedly caused by [the defendant], are not affected by its repeal. Litigation commenced prior to repeal should not be terminated until the matter is prosecuted to a final adjudication even where there is no specific savings clause."

*State v. Exxon Corp.*, 151 N.J. at 478 n. 5, 376 A.2d 1339.

Similarly, this Court finds that the Trustee's fraudulent conveyance cause of action under the now repealed UFCA, which is not subject to any statute of limitations, is preserved. However, this Court refuses to find that N.J.S.A. 1:1–11 transforms a timely cause of action brought under the UFCA into an action brought under the UFTA.

## CONCLUSION

This Court will enter an Order in accordance with the above opinion.