**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3496-17T3

IN THE MATTER OF HAZARDOUS
DISCHARGE SITE REMEDIATION
GRANT APPLICATION – 50%
INNOCENT PARTY GRANT.

_____

Submitted October 21, 2019 – Decided December 24, 2019

Before Judges Sabatino and Sumners.

On appeal from the New Jersey Department of Environmental Protection.

Lieberman & Blecher, PC, attorneys for appellant Pastor Enterprises (Michael George Sinkevich, Jr., of counsel and on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent New Jersey Department of Environmental Protection (Melissa H. Raksa, Assistant Attorney General, of counsel; Bethanne Sonne Prugh, Deputy Attorney General, on the brief).

PER CURIAM

Pastor Enterprises (Pastor) appeals from the February 23, 2018 final agency decision of the New Jersey Department of Environmental Protection

(DEP) denying its August 9, 2017 innocent party grant (IPG) application for reimbursement of a portion of its environmental remediation costs. DEP denied the application because the Legislature eliminated the IPG program – funded from the Hazardous Discharge Site Remediation Fund (HDSRF) established by the Brownfield and Contaminated Site Remediation Act (Brownfield Act), N.J.S.A. 58:10B-1 to -31 – through the enactment of Assembly Bill 1954 L. 2017, c. 353 (the amendment) into law. Because we conclude that Pastor Enterprises's IPG application was not grandfathered under the amendment and equity does not warrant its entitlement to funding, we affirm.

I.

Pastor is a New Jersey partnership formed in 1973 for the purpose of purchasing 544-600 Lincoln Boulevard in Middlesex Borough (the property). After purchasing the property, Pastor Enterprises became aware the property was contaminated with hazardous waste discharge from previous owners. Thus, on August 25, 1995, the partnership filed an IPG application to help defray its costs to remediate the property.

At the time of the application, the Brownfield Act authorized grants to an "innocent party," as the term was defined in N.J.S.A. 58:10B-6(a)(4) (2010). To receive funding, an applicant had to establish, among other criteria, that the

hazardous substances to be remediated were not used by the applicant at the property and that the applicant did not discharge any hazardous substances at the area where the discharge was discovered. Ibid. When DEP determined that an IPG application was eligible for funding, it would recommend the grant to the New Jersey Economic Development Authority (EDA) to be funded. See N.J.A.C. 19:31-8.9. EDA had the discretion to take final action to issue the grant. Ibid.

The DEP approved Pastor Enterprises's application five months later in January 1996. Over the next twenty-one years, Pastor Enterprises applied for and was granted supplemental IPG funding.

In fact, in April 2012, Pastor Enterprises received funding despite having sold the property in February 2000. Recognizing our Supreme Court's decision in TAC Assocs. v. N.J. Dep't of Envtl. Prot., 202 N.J. 533 (2010), the DEP noted, "there has been a change in ownership since the original grant was awarded. Despite this, since the applicant had been in accordance with N.J.S.A. 58:10B-6 at the time of the original [IPG] award, and the same applicant is requesting the supplemental grant, Pastor Enterprises … is therefore eligible for a supplemental IPG."

A-3496-17T3

On August 9, 2017, Pastor Enterprises filed an application for IPG funding, requesting fifty percent of $722,183.16 to cover further remediation costs. Prior to filing the request, Pastor Enterprises had already incurred $505,213.66 in costs related to the remediation; allegedly in reliance on the DEP approving the request. While the application was pending, on January 16, 2018, the Legislature passed the amendment, which, among other things, eliminated the IPG program. Section 6 of the amendment states:

> This act shall take effect immediately and shall apply to any application for financial assistance or a grant from the [IPG program] pending before [the DEP] on the effective date of this act, or submitted on or after the effective date of the act, but shall not apply to any application determined to be technically eligible and recommended for funding by [the DEP] and pending before the [EDA] on the effective date of this act.
>
> [L. 2017, c. 353 § 6 (emphasis added).]

On February 23, 2018, five months after Pastor Enterprises's IPG application was filed, the DEP denied the request, explaining that as of January 16, 2018, the amendment eliminated the IPG program "effect[ive] immediately," and "applies to any application for an [IPG] from the HDSRF pending before the [DEP] as of January 15, 2018 . . . ." Thus, the DEP noted, "the above noted [IPG] application can no longer be considered for grant funding." Pastor

Enterprises subsequently sent a letter to the DEP requesting a reconsideration of its denial; however, the partnership received no response.

II.

A.

Pastor Enterprises first argues the DEP's ruling misinterprets the amendment's plain language, which dictates that its IPG application was grandfathered and entitled to funding. In support, Pastor Enterprises cites our Supreme Court's decision in TAC Assocs., 202 N.J. 533. There, the Court interpreted the Brownfield Act's provisions to define ownership of a property to determine eligibility to receive an IPG. Ibid. Under N.J.S.A. 58:10B-6(a)(4) (2010), "[a] person qualifies for an [IPG] if that person acquired the property prior to December 31, 1983 and continues to own the property until such time as the authority approves the grant. . . ." The Court held that ownership at the time of the application controlled. TAC Assocs., 202 N.J. at 543-44.

Pastor Enterprises explains that when it applied for supplemental IPG funding in 2009, the DEP, in accordance with N.J.S.A. 58:10B-6(a)(4) and TAC Assocs., approved the request in April 2012, despite its sale of the property, because it owned the property at the time of the initial award in January 1996. Pastor Enterprises maintains its funding eligibility therefore refers back to 1996,

A-3496-17T3

when its property was originally deemed technically eligible and granted remediation funding and remains eligible for an IPG even though the amendment eliminated IPG funding effective January 16, 2018.

To address Pastor Enterprises's grandfather clause contention, we examine the DEP's interpretation and application of the amendment. It is well settled that we "afford substantial deference to an agency's interpretation of a statute that the agency is charged with enforcing." Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 196 (2007) (citing R & R Mktg., L.L.C. v. Brown–Forman Corp., 158 N.J. 170, 175 (1999)). Nevertheless, "we are 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue.'" Utley v. Bd. of Review, Dep't of Labor, 194 N.J. 534, 551 (2008) (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)). Thus, our review of a question of law is de novo. Mount v. Bd. of Trs., Police & Firemen's Ret. Sys., 233 N.J. 402, 419 (2018) (citation omitted).

The primary purpose of "statutory interpretation is to determine and 'effectuate the Legislature's intent.'" State v. Rivastineo, 447 N.J. Super. 526, 529 (App. Div. 2016) (quoting State v. Shelley, 205 N.J. 320, 323 (2011)). We start with considering "the plain 'language of the statute, giving the terms used therein their ordinary and accepted meaning.'" Ibid. And where "[t]he

6

Legislature's chosen words lead to one clear and unambiguous result, the interpretive process comes to a close, without the need to consider extrinsic aids." Ibid. Hence, we do "not 'rewrite a plainly-written enactment of the Legislature [or] presume that the Legislature intended something other than that expressed by way of the plain language.'" Id. at 530 (quoting Marino v. Marino, 200 N.J. 315, 329 (2009) (alteration in original)).

Applying these rules of statutory interpretation, we conclude the DEP's interpretation of the amendment is consistent to the statute's plain language. The amendment grandfathered applications that met certain criteria. To receive IPG funding after the amendment's effective date of January 16, 2018, the application must: (1) have been previously submitted to the DEP; (2) be technically eligible; (3) have been recommended by the DEP for funding; and (4) be pending before the EDA. L. 2017, c. 353 § 6.

Pastor Enterprises, however, has not satisfied the amendment's criteria that prior to January 16, 2018, its August 9, 2017 IPG application was recommended for funding by the DEP and was pending before the EDA. Moreover, there is no indication that the DEP's actions were arbitrary, capricious, or unreasonable in not approving the application for funding and recommending it to the EDA for funding before the IPG grant program was

defunded effective January 16, 2018.  See J.B. v. N.J. State Parole Bd., 229 N.J. 21, 43 (2017).

Further, Pastor Enterprises's reliance on TAC Assocs. is misplaced.  In TAC Assocs., the Court clarified the definition of "continuous" ownership, as added in the Legislature's 2010 amendment, to determine IPG funding eligibility.  202 N.J. at 544.  There is nothing in TAC Assocs. requiring this court to hold that Pastor Enterprises is grandfathered to continue to receive IPG funding merely because it was initially awarded an IPG in 1996.  In fact, Pastor Enterprises's assertion is belied by the record, which shows that it was required to submit a new IPG application for every supplemental funding request, complete with cost estimates and other statutory requirements.

In granting Pastor Enterprises supplemental IPG funding even though it sold the property in 2000, the DEP reasoned that, "since Pastor Enterprises … has been in accordance with N.J.S.A. 58:10B-6 at the time of the original grant reward, . . . Pastor Enterprises … is therefore eligible for a supplemental IPG." This ruling merely indicates that Pastor Enterprises was eligible to receive a supplemental grant despite no longer owning the property, it does not award a supplemental grant or make the applicant technically eligible and recommended for funding, retroactive to the initial award in 1995.  If that was the case, there

A-3496-17T3

would be no reason for Pastor Enterprises to submit a new application each time it requested supplemental funds.

Hence, Pastor Enterprises's IPG application for funding was not grandfathered to entitle it for funding after the Legislature's amendment eliminating funding for the IPG program.

B.

Pastor Enterprises next contends its application should have been granted under equitable doctrines of fundamental fairness. As "a family partnership with no assets," it stresses it has remediated the property continuously for twenty-one years in reliance on IPG funding reimbursements; most recently spending $505,213.66 in remediation costs from 2016-2017. See Miller v. Miller, 97 N.J. 154, 163 (1984). Pastor Enterprises avers DEP's decision should be reversed because it had no control over the agency's delay in approving its August 9, 2017 IPG application. Thus, arguing it should not be unfairly penalized as a result considering there has been no explanation why the application took five months to be reviewed, or that it was not made aware there was pending legislation to eliminate the IPG program. Under these circumstances, Pastor Enterprises declares it is manifestly unjust to apply the amendment retroactively to deny its

9

application.  See Oberhand v. Dir., Div. of Taxation, 193 N.J. 558, 570-71 (2008).

Our consideration of Pastor Enterprises's arguments are guided by the following well-settled equitable principles.  The doctrine of equitable estoppel "is designed to prevent injustice by not permitting a party to repudiate a course of action on which another party has relied to his detriment."  Knorr v. Smeal, 178 N.J. 169, 178 (2003) (citing Mattia v. N. Ins. Co. of N.Y., 35 N.J. Super. 503, 510 (App. Div. 1955)).

"To establish equitable estoppel, parties must prove that an opposing party 'engaged in conduct, either intentionally or under circumstances that induced reliance, and that [they] acted or changed their position to their detriment.'" Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 189 (2013) (alteration in original) (quoting Knorr, 178 N.J. at 178).  "There need not be evidence of fraudulent intent for equitable estoppel to apply."  Tasca v. Bd. of Trs., Police and Fireman's Ret. Sys., 458 N.J. Super. 47 (App. Div. 2019) (citing Hendry v. Hendry, 339 N.J. Super. 326, 336 (App. Div. 2001)).  However, the doctrine is "rarely invoked against a governmental entity, particularly when estoppel would 'interfere with essential governmental functions.' Nonetheless, equitable considerations are relevant to assessing governmental conduct, and may be

10

invoked to prevent manifest injustice[.]"  In re Johnson, 215 N.J. 366, 378-79 (2013) (quoting O'Malley v. Dep't of Energy, 109 N.J. 309, 316-17 (1987) (citations omitted)).

"The doctrine of fundamental fairness 'serves to protect citizens generally against unjust and arbitrary governmental action, and specifically against governmental procedures that tend to operate arbitrarily.'"  State v. Saavedra, 222 N.J. 39, 67 (2015) (emphasis omitted) (quoting Doe v. Poritz, 142 N.J. 1, 108 (1995)).  The Court has described this doctrine as "an integral part of due process" that "is often extrapolated from or implied in other constitutional guarantees."  State v. Miller, 216 N.J. 40, 71, 76 (2013) (quoting Oberhand, 193 N.J. at 578).  The doctrine is an "elusive concept" and its "exact boundaries are undefinable."  State v. Yoskowitz, 116 N.J. 679, 704–05 (1989).  The doctrine is applied "sparingly" and only where the "interests involved are especially compelling[;]" if a defendant would be subject "to oppression, harassment, or egregious deprivation," it is to be applied.  Doe, 142 N.J. at 108 (quoting Yoskowitz, 116 N.J. at 712).

With respect to retroactive legislation, our Supreme Court explained "'[i]t is a fundamental principle of jurisprudence that retroactive application of new laws involves a high risk of being unfair.' . . .  Nevertheless, if the Legislature

11

expresses an intent that the statute is to be applied retroactively, the statute should be so applied." Oberhand, 193 N.J. at 570-71 (quoting Gibbons v. Gibbons, 86 N.J. 515, 522 (1981)). A statute's retroactive application may be curbed if it would result in a manifest injustice. Id. at 571.

Applying these principles, Pastor Enterprises has not established it was treated unfairly by the DEP's denial of its IPG application, which was pending at the time the amendment took effect to eliminate funding for the IPG program. The Legislature's actions unfolded in the public eye, resulting in an end of the program. It debated Assembly Bill 1954 for nearly three years prior to its enactment. See A. 1954 (Jan. 27, 2016);[1] A. 1954 (June 6, 2016); A. 1954 (Dec. 11, 2017); A. 1954 (Jan. 16, 2018). While the bill's third revision called for reduced funding for the IPG program, the Legislature later decided to completely eliminate the program. A. 1954 (Jan. 16, 2018). Despite DEP's awareness of the pending bill, we know of no obligation on the agency to inform Pastor Enterprises of the bill's status.

---

[1] On January 26, 2016, Assembly Bill 1954 was introduced in the Legislature. A. 1954 (Jan. 26, 2016). The bill aimed to amend key sections of the HDSRF provisions of the Brownfield Act, N.J.S.A. 58:10B. Ibid. The proposed bill would make an overall reduction in the maximum total award an applicant could receive under the IPG. Ibid.

A-3496-17T3

The elimination of the IPG program was through legislative action, not through the DEP's initiative. The agency had no control over the Legislature, a separate branch of government, which authorized governmental subsidy to clean-up environmentally contaminated property satisfying specific criteria. N.J.S.A. 58:10B-6. As noted above, the record is devoid of any suggestion that the DEP acted in bad faith and delayed its review of Pastor Enterprises's application to conserve State remediation funds by not recommending and submitting the partnership's request for reimbursement of remediation costs to the EDA for funding due to the imminent ending or reduction of the IPG program.

Moreover, as a separate branch of government, we have no authority to second-guess the fiscal decisions of the Legislature, which has the sole power and responsibility to raise revenue and direct funding for the operation of our state government. N.J. Const. art. VIII, § 2, ¶ 2. See City of Camden v. Byrne, 82 N.J. 133, 149 (1980) (holding "[t]here can be no redress in the courts to overcome either the Legislature's action or refusal to take action pursuant to its constitutional power over state appropriations."); see also O'Neill v. State Highway Dep't, 50 N.J. 307, 315 (1967).

Even though Pastor Enterprises received the benefit of the IPG program for over twenty-one years, it was never promised or entitled to continually receive supplemental funding. There is no indication DEP advised Pastor Enterprises it would receive IPG funding before it incurred the remediation costs it sought in its August 9, 2017 application. Reimbursement of remediation costs through the program was always restricted to the availability of public funds coupled with DEP's statutory review. Thus, Pastor Enterprises and other applicants seeking IPG funding were subject to the Legislature's determination that limited public funds may be diverted from an eminently worthy program. Based on the record before us, the Legislature's decision resulted in an unfortunate financial repercussion to Pastor Enterprises that this court is without the power to assuage.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3496-17T3