SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**In the Matter of Registrant J.D-F.** **(A-24-20) (084397)**

**Argued April 27, 2021 -- Decided August 9, 2021**

**FERNANDEZ-VINA, J., writing for a unanimous Court.**

In this appeal, the Court considers whether N.J.S.A. 2C:7-2(g) (subsection (g)), a Megan's Law provision that bars certain sex offenders from applying under N.J.S.A. 2C:7-2(f) (subsection (f)) to terminate their registration as sex offenders, applies to a registrant who committed Megan's Law offenses before the date on which subsection (g) became effective but was convicted and sentenced after its effective date.

Subsection (f) permits registrants -- "[e]xcept as provided in subsection (g)" -- to make an application to terminate their registration as sex offenders upon proof that they have remained offense-free for at least fifteen years and no longer pose a threat to the safety of others. N.J.S.A. 2C:7-2(f).

Effective January 8, 2002, the Legislature added subsection (g) to Megan's Law. L. 2001, c. 392. Subsection (g) prohibits offenders from applying to terminate their registration if they have been convicted of certain enumerated sex offenses or of "more than one sex offense." N.J.S.A. 2C:7-2(g).

In December 2002, registrant was convicted of criminal sexual contact and child endangerment for conduct that occurred at some point between May 1 and August 31, 2001. Registrant was sentenced in May 2003. In addition to a period of probation and time in county jail, registrant was ordered to adhere to Megan's Law registration requirements and community supervision for life (CSL).

In February 2019, registrant filed a motion to terminate his registration and CSL requirements, along with the requisite proofs. The State accepted registrant's doctor's conclusion that registrant no longer presented a risk of harm to others in his community, and it therefore did not oppose his release from CSL. However, the State objected to registrant's release from Megan's Law registration, relying on subsection (g).

The trial court found that subsection (g) barred relief from Megan's Law's registration requirements and that application of subsection (g) was not retroactive in this matter because registrant was both convicted and sentenced after subsection (g)'s

1

effective date. The Appellate Division affirmed, adding that subsection (g)'s plain language indicated that the relevant date for determining whether the statute was effective as to a particular registrant was, as is relevant here, the date on which the registrant was "convicted of . . . more than one sex offense."

**HELD:** The relevant date for purposes of determining whether subsection (g) is effective as to a particular registrant is the date on which that registrant committed the sex offenses that would otherwise bar termination of registration under subsection (f). Thus, subsection (g) does not apply to registrant.

1. To determine whether a statute should be retroactively applied, the Court considers (1) whether the Legislature intended to give the statute retroactive application, and (2) whether retroactive application is an unconstitutional interference with vested rights or will result in a manifest injustice. A law is retrospective if it applies to events occurring before its enactment or if it changes the legal consequences of acts completed before its effective date. The Court reviews the history and provisions of Megan's Law, including the adoption of subsection (g) effective January 8, 2002. The Court has previously determined that subsection (g) "does not apply retroactively." In re Registrant G.H., 240 N.J. 113, 113 (2019). The holding that subsection (g) cannot be applied retroactively transcends the facts of G.H.; it is a general finding. (pp. 11-16)

2. Here, at the time that registrant committed the sex offenses that subjected him to lifetime registration under subsection (g), that provision had not yet taken effect. Nowhere in the text of subsection (g) does it state that the statute's applicability is to be measured by the date of conviction. The Legislature's use of the language "who has been convicted of" cannot be divorced from the specified offenses that follow it, which reveal that subsection (g) is applicable to only a specific subset of the offenses to which Megan's Law registration requirements apply. That language does not mean that the date by which courts are to analyze the applicability of subsection (g) is the date of conviction. The material date to measure the applicability of subsection (g) is that on which the registrant's conduct occurred. Such a date represents the point in time that triggers the legal consequences from which a person seeks relief. Any application of subsection (g) to registrants whose relevant predicate offenses predate that subsection's enactment would be a retroactive application barred by the Court's decision in G.H. See 240 N.J. at 113-14. The trial court and Appellate Division thus erred in finding that subsection (g) should apply to registrant. (pp. 16-18)

**REVERSED and REMANDED to the trial court.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, SOLOMON, and PIERRE-LOUIS join in JUSTICE FERNANDEZ-VINA's opinion.**

2

SUPREME COURT OF NEW JERSEY

A-24 September Term 2020

084397

In the Matter of Registrant J.D-F.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
| --- | --- |
| April 27, 2021 | August 9, 2021 |

James H. Maynard argued the cause for appellant J.D-F.
(Maynard Law Office, attorneys; James H. Maynard, on
the briefs).

Jeffrey L. Weinstein, Acting Assistant Prosecutor/Special
Deputy Attorney General, argued the cause for
respondent State of New Jersey (Michael J. Williams,
Acting Hunterdon County Prosecutor, attorney; Jeffrey L.
Weinstein, on the briefs).

Jonathan Edward Ingram, Assistant Deputy Public
Defender, argued the cause for amicus curiae Public
Defender of New Jersey (Joseph E. Krakora, Public
Defender, attorney; Fletcher C. Duddy, Deputy Public
Defender, of counsel, and Jonathan Edward Ingram, of
counsel and on the brief).

Emily R. Anderson, Deputy Attorney General, argued the
cause for amicus curiae Attorney General of New Jersey
(Andrew J. Bruck, Acting Attorney General, attorney;
Emily R. Anderson, of counsel and on the brief).

JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

1

In this appeal, the Court must decide whether N.J.S.A. 2C:7-2(g) (subsection (g)), a Megan's Law provision that bars certain sex offenders from applying under N.J.S.A. 2C:7-2(f) (subsection (f)) to terminate their registration as sex offenders, applies to a registrant who committed Megan's Law offenses before the date on which subsection (g) became effective but was convicted and sentenced after its effective date.

Subsection (f) permits registrants -- "[e]xcept as provided in subsection (g)" -- to make an application to terminate their registration as sex offenders upon proof that they have remained offense-free for at least fifteen years and no longer pose a threat to the safety of others. N.J.S.A. 2C:7-2(f).

Effective January 8, 2002, the Legislature added subsection (g) to Megan's Law. L. 2001, c. 392. Subsection (g) prohibits offenders from applying to terminate their registration if they have been convicted of certain enumerated sex offenses or of "more than one sex offense." N.J.S.A. 2C:7-2(g).

Here, the issue is determining whether subsection (g) was impermissibly applied to registrant, who committed a series of sex offenses between May and August 2001 but was not convicted for those offenses until December 2002.

The trial court and Appellate Division held that subsection (g) applied to registrant because he was convicted after that subsection's effective date.

We disagree.  The fact that the plain text of subsection (g) bars persons "convicted of . . . more than one sex offense" from terminating their registration obligations does not, in our view, mean that the pertinent date for determining whether subsection (g) would apply to a particular registrant is the date of conviction.  The statute's reference to those convicted persons merely serves to define the class of people who may be subject to subsection (g)'s provisions.  We hold that the relevant date for purposes of determining whether subsection (g) is effective as to a particular registrant is the date on which that registrant committed the sex offenses that would otherwise bar termination of registration under subsection (f).

Therefore, we reverse the judgment of the Appellate Division.

I.

A.

We begin by summarizing the pertinent facts and procedural history.

Registrant was twenty years old when he was working as a manager at a McDonalds in Hillsborough.  He participated in interviewing and hiring two teenage boys -- A.S., age fifteen, and M.V.S., age sixteen.  At some point between May 1 and August 31, 2001, registrant approached A.S. in the men's bathroom and told A.S. he would help him fix his disheveled clothing.  Registrant then touched the boy between his legs, placing his hand on A.S.'s

3

genitals, over his clothing.  During this same period, registrant, on four or five occasions, kissed M.V.S. "or otherwise touched him inappropriately in a sexual manner."

On February 11, 2002, registrant was indicted and charged with third-degree aggravated criminal sexual contact, N.J.S.A. 2C:14-3(a) (count one), and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a) (count two), for his conduct toward A.S.  For his acts against M.V.S., registrant was charged with two counts of fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b) (counts three and four).

Registrant was tried by a jury and convicted, on December 19, 2002, on counts one, two, and four.  The jury found registrant not guilty on count three.

Registrant was sentenced on May 21, 2003.  After the sentencing judge merged count two into count one, registrant was sentenced to concurrent three-year terms of probation on counts one and four.  Registrant was also required to serve sixty days in county jail as a special condition of probation.  Further, registrant was ordered to adhere to Megan's Law registration requirements and community supervision for life (CSL).

On February 4, 2019, registrant filed a motion to terminate his Megan's Law registration and his CSL requirements.  He submitted an affidavit alongside his motion certifying that he had not been convicted of any offense

4

since the events of 2001, which the State later confirmed. Registrant also certified he had maintained gainful employment throughout his CSL and that he had never failed a random drug or alcohol test. Additionally, registrant submitted a psychosexual and actuarial assessment, completed by Dr. James Reynold, Ph.D., stating with a reasonable degree of psychological certainty that registrant "is not likely to commit another sexual offense"; "he does not present a risk of harm to others in the community"; and "his risk of harm . . . will not increase if the Court determines that it is appropriate to relieve [registrant] of his registration obligation and to remove him from CSL."

The State accepted Dr. Reynold's conclusion that registrant no longer presented a risk of harm to others in his community and therefore did not oppose his release from CSL. However, the State objected to registrant's release from Megan's Law registration. In the State's view, subsection (g) made registrant ineligible for release under subsection (f) because he was convicted of more than one enumerated sex offense.

On April 2, 2019, the trial court adopted the State's position, granting registrant's motion to release him from his CSL obligations but denying it as to Megan's Law. According to the trial court, subsection (g) barred relief from Megan's Law's registration requirements, and application of subsection (g) was not retroactive in this matter because registrant was both convicted and

5

sentenced after subsection (g)'s effective date. The trial court found that the Appellate Division's decision in In re Registrant G.H., 455 N.J. Super. 515 (App. Div. 2018), aff'd, 240 N.J. 113 (2019), which held that subsection (g) could not be applied retroactively, did not apply here. In the trial court's view, "subsection (g) did not change the legal consequences on the day of [registrant's] convictions," and "[a]t the time of these convictions[,] he could not have reasonably relied upon the possibility of relief from lifetime registration."

After the trial court's decision, but prior to the Appellate Division's review of registrant's appeal in this matter, this Court affirmed the Appellate Division's decision in G.H. This Court concluded the Legislature never intended for subsection (g) to apply retroactively, that subsection (g) was not curative, and that none of the parties' expectations in that matter warranted a retroactive application. See In re Registrant G.H., 240 N.J. 113, 114 (2019).

On March 18, 2020, the Appellate Division affirmed the trial court's decision to deny registrant's motion for release from his Megan's Law obligations "substantially for the reasons outlined by" the trial court. The Appellate Division noted that registrant was wrong to "focus on the timing of his criminal misconduct, rather than the date of his convictions." Because registrant was convicted after subsection (g) was enacted, unlike the registrants

6

in G.H., the Appellate Division found that subsection (g) would apply to registrant without "'retroactively' alter[ing] the legal consequences that attached to [his] December 2002 convictions." Second, the Appellate Division held that subsection (g)'s plain language indicated that the relevant date for determining whether the statute was effective as to a particular registrant was, as is relevant here, the date on which the registrant was "convicted of . . . more than one sex offense."

## II.

## A.

Registrant contends that both the trial court and the Appellate Division erred in their retroactivity analysis by using the dates of his conviction and sentencing rather than the date on which the conduct resulting in his offenses occurred. According to registrant, without an expression of contrary legislative intent, new civil laws may be given only prospective effect "as of the [d]ate of '[t]riggering' [c]onduct." Registrant argues that the Appellate Division has "[i]mpermissibly [n]arrowed" G.H.'s retroactivity bar. In registrant's view, his date of conviction does not create the legal consequences under Megan's Law; rather, "imposition of [s]ubsection (g) is a legal consequence of the commission of specific offenses that are merely memorialized in a conviction." Registrant further argues that procedural due

7

process and "fundamental fairness" prohibit applying subsection (g) to "registrants whose offense conduct predates the effective date" of that law because those registrants lacked "'prior notice' and 'fair warning' of the consequences of their conduct."

Appearing as amicus curiae, the New Jersey Office of the Public Defender (Public Defender) aligns itself with registrant. The Public Defender argues that to apply subsection (g) to registrant would necessarily be retrospective, because it would attach "new legal consequences" to conduct completed before subsection (g)'s enactment. The Public Defender contends that the Appellate Division and trial court erroneously focused on the date of registrant's conviction, rather than his underlying conduct, and failed to determine whether the retrospective application of subsection (g) constituted a manifest injustice.

According to the Public Defender, even if this Court holds that subsection (g) can be applied to registrant, the courts below nevertheless committed reversible error by "failing [to] engage in manifest injustice analysis" and failing to conclude that subsection (g)'s application to registrant would, in fact, be a manifest injustice. In the alternative, the Public Defender raises a new argument: if this Court holds subsection (g) applies but is not retrospective, then the date on which a person is "convicted," within the

8

meaning of that section, should be interpreted as the date on which guilt is established, rather than the date of sentencing.

B.

The State seeks affirmance of the Appellate Division opinion and contends that both the trial court and the Appellate Division correctly held that subsection (g) was not applied retroactively here because, based on the statute's plain language which explicitly uses the term "conviction," the operative date is the conviction date, not the offense date. The State argues that "[t]he offense date is simply not relevant under the G.H. retroactivity analysis."

The State also argues that registrant had no reasonable expectation that he would one day be free of Megan's Law registration because he "did not enter into a guilty plea with the expectation of someday being eligible for relief under [s]ubsection (f)." The State contends that "[s]urely registrant cannot reasonably claim that he would have altered his behavior -- such as limiting his illegal sex acts to one victim on one occasion -- so that he could maintain eligibility of relief from registration." Accordingly, the State maintains, there has been no manifest injustice nor violation of due process or fundamental fairness.

In a supplemental brief, the State argues that "[e]ven if application of subsection (g) is considered retroactive, such application is consistent with civil retroactivity principles due to the [l]egislative intent behind Megan's [L]aw and its remedial purpose." According to the State, retroactively applying subsection (g) to registrant is supported by the "ameliorative" purpose of Megan's Law, as recognized in Doe v. Poritz, "to protect the public" against "the 'danger of recidivism posed by sex offenders and offenders who commit other predatory acts against children, and the dangers posed by persons who prey on others as a result of mental illness,'" quoting 142 N.J. 1, 12 (1995).

Appearing as amicus curiae, the Attorney General adopts and largely echoes the State's position and "urges this Court to affirm the Appellate Division's opinion and hold that subsection (g) of Megan's Law applies to offenders who were convicted of sex offenses after its enactment in 2002."

The Attorney General adds that the Legislature may amend existing laws and that "the public is bound by such amendments on the date that they go into effect." According to the Attorney General, "[j]ust as defendants are bound by an amended statute of limitations if theirs has not already expired, registrants who are convicted of a registrable sex offense are bound by any amendment to Megan's Law in between their offense conduct and their conviction."

10

III.

A.

The issue here -- whether the operative date for determining the applicability of subsection (g) is the date of registrant's convictions or the date he committed the sex offenses on which his convictions are based -- is a question of law that we review de novo. See S.T. v. 1515 Broad St., LLC, 241 N.J. 257, 274 (2020). "The primary goal of statutory interpretation is to determine as best [as possible] the intent of the Legislature, and to give effect to that intent." In re Registrant N.B., 222 N.J. 87, 98 (2015) (alteration in original) (quoting State v. Lenihan, 219 N.J. 251, 262 (2014)). "[I]f a statute's plain language is ambiguous or subject to multiple interpretations, the Court 'may consider extrinsic evidence including legislative history and committee reports.'" State v. Frye, 217 N.J. 566, 575 (2014) (quoting State v. Marquez, 202 N.J. 485, 500 (2010)).

B.

"The courts of this State have long followed a general rule of statutory construction that favors prospective application of statutes." Gibbons v. Gibbons, 86 N.J. 515, 521 (1981). As this Court has stated,

> [i]t is a fundamental principle of jurisprudence that retroactive application of new laws involves a high risk of being unfair. There is general consensus among all people that notice or warning of the rules that are to be

11

> applied to determine their affairs should be given in advance of the actions whose effects are to be judged by them. The hackneyed maxim that everyone is held to know the law, itself a principle of dubious wisdom, nevertheless presupposes that the law is at least susceptible of being known. But this is not possible as to law which has not been made.
>
> [Id. at 522 (quoting 2 Sutherland, Statutory Construction § 41.02, at 247 (4th ed. 1973)).]

The practice of generally applying statutes prospectively, however, "is no more than a rule of statutory interpretation meant to 'aid the court in the search for legislative intent'" and "'is not to be applied mechanistically to every case.'" Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 387 (2016) (first quoting Twiss v. State, 124 N.J. 461, 467 (1991); and then quoting Gibbons, 86 N.J. at 522).

We employ a two-part test to determine whether a statute should be retroactively applied: first, we consider "whether the Legislature intended to give the statute retroactive application," and second, we determine "whether retroactive application is an unconstitutional interference with 'vested rights' or will result in a 'manifest injustice.'" Twiss, 124 N.J. at 467 (quoting Dep't of Envtl. Prot. v. Ventron Corp., 94 N.J. 473, 498 (1983)).

Our previous jurisprudence has made clear that "legislative intent for retroactivity can be demonstrated: '(1) when the Legislature expresses its intent that the law apply retroactively, either expressly or implicitly; (2) when

12

an amendment is curative; or (3) when the expectations of the parties so warrant.'" Johnson, 226 N.J. at 387 (quoting James v. N.J. Mfrs. Ins. Co., 216 N.J. 552, 563 (2014)).  Legislative intent for retroactive application "may be either express, that is, stated in the language of the statute or in the pertinent legislative history, or implied, that is, retroactive application may be necessary to make the statute workable or to give it the most sensible interpretation."  Id. at 388 (quoting Gibbons, 86 N.J. at 522).  "[C]ourts generally will enforce newly enacted substantive statutes prospectively, unless [the Legislature] clearly expresses a contrary intent."  Maeker v. Ross, 219 N.J. 565, 578 (2014).

Notably, "[a] law is retrospective if it 'appl[ies] to events occurring before its enactment' or 'if it "changes the legal consequences of acts completed before its effective date.""'  Riley v. State Parole Bd., 219 N.J. 270, 285 (2014) (second alteration in original) (emphases added) (quoting Miller v. Florida, 482 U.S. 423, 430 (1987)).  We have stated that "[c]ourts use the terms 'retrospective' and 'retroactive' interchangeably."  Id. at 285 n.4.

### C.

Originally enacted in 1994 to combat "[t]he danger of recidivism posed by sex offenders," Megan's Law, N.J.S.A. 2C:7-1 to -23, requires certain sex offenders to publicly register with law enforcement.  N.J.S.A. 2C:7-1.  The

13

statute specifies that "[a] person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sex offense as defined in subsection (b) of this section shall register as provided in subsections (c) and (d) of this section." N.J.S.A. 2C:7-2(a)(1). Under subsection (b), aggravated criminal sexual contact and endangering the welfare of a child are listed as sex offenses subject to registration. N.J.S.A. 2C:7-2(b)(1) to (2).

Until January 8, 2002, subsection (f) read as follows:

> A person required to register under this act may make application to the Superior Court of this State to terminate the obligation upon proof that the person has not committed an offense within 15 years following conviction or release from a correctional facility for any term of imprisonment imposed, whichever is later, and is not likely to pose a threat to the safety of others.
>
> [N.J.S.A. 2C:7-2(f) (2000).]

Effective January 8, 2002, the Legislature added subsection (g) and amended subsection (f) to begin with the phrase, "Except as provided in subsection (g) of this section." See L. 2001, c. 392. Subsection (g) states that

> [a] person required to register under this section who has been convicted of, adjudicated delinquent, or acquitted by reason of insanity for more than one sex offense as defined in subsection (b) of this section or who has been convicted of, adjudicated delinquent, or acquitted by reason of insanity for aggravated sexual assault pursuant to subsection (a) of N.J.S.A. 2C:14-2

14

or sexual assault pursuant to paragraph (1) of subsection (c) of N.J.S.A. 2C:14-2 is not eligible under subsection (f) of this section to make application to the Superior Court of this State to terminate the registration obligation.

[N.J.S.A. 2C:7-2(g).]

We have previously determined that subsection (g) "does not apply retroactively." G.H., 240 N.J. at 113. In G.H., the registrants both pled guilty -- prior to subsection (g)'s effective date -- to offenses that required registration for life. Id. at 113-14. As with registrant in this current appeal, the registrants' offenses in G.H. fell within the ambit of the newly enacted subsection (g). Id. at 114. But this Court found that subsection (g) could not apply to the registrants because there was "no statement of legislative intent, express or implied, that subsection (g) should be applied retroactively," or that "subsection (g) was curative, or that the parties' expectations warranted retroactive application." Ibid.

The holding that subsection (g) cannot be applied retroactively transcends the facts of G.H.; it is a general finding. But, in light of the facts of G.H., that general principle was applied there only to "the time of [the registrants'] pleas." We did not find in G.H. that the plea date was dispositive and that all pleas and convictions entered after the effective date of subsection (g) would be controlled by that subsection if the Megan's Law offenses at

15

issue were among those specified in subsection (g).  That is the question posed here.

## IV.

Applying the principles set forth above, we now hold that the relevant dates for determining the applicability of subsection (g) are the dates on which a registrant committed the relevant sex offenses rather than the date of conviction of those offenses.

Here, registrant was convicted of committing criminal sexual contact and child endangerment between May 1 and August 31, 2001, which subjected him to registration under Megan's Law.  See N.J.S.A. 2C:7-2(b)(1) to (2).  Subsection (g) was not effective until January 8, 2002, L. 2001, c. 392.  Therefore, at the time that registrant committed the sex offenses that subjected him to lifetime registration under subsection (g), that provision had not yet taken effect.

Subsection (g) states that a person "who has been convicted of . . . more than one sex offense" may not apply under subsection (f) to terminate the Megan's Law registration obligations.  As the Appellate Division in G.H. aptly noted, "[t]he Legislature's use of the present perfect tense indicates subsection (g) applies to an action completed, although not at any definite time in the past."  G.H., 455 N.J. Super. at 532 (emphasis added).  Nowhere in the text of

16

subsection (g) does it state that the statute's applicability is to be measured by the date of conviction. In our view, the Legislature's use of the language "who has been convicted of" serves merely to refer to the class of people to whom the statute may apply. The phrase cannot be divorced from the specified offenses that follow it, which reveal that subsection (g) is applicable to only a specific subset of the offenses to which Megan's Law registration requirements apply. That language does not mean that the date by which courts are to analyze the applicability of subsection (g) is the date of conviction.

Registrant's conviction and sentencing were legal determinations of his already-completed conduct. Given that a statute is retrospective if it "'appl[ies] to events occurring before its enactment' or 'if it changes the legal consequences of acts completed before its effective date,'" Riley, 219 N.J. at 285 (alteration in original) (emphasis added) (quoting Miller, 482 U.S. at 430), the material date to measure the applicability of subsection (g) is that on which the registrant's conduct occurred. Such a date represents the point in time that triggers the "legal consequences" from which a person seeks relief. Any application of subsection (g) to registrants whose relevant predicate offenses predate that subsection's enactment would be a retroactive application barred by our decision in G.H. See 240 N.J. at 113-14.

17

Having found that the operative date for determining whether subsection (g) is effective as to a particular registrant is the date on which the registrant commits the offenses that require lifetime registration, we now hold that the trial court and Appellate Division erred in finding that subsection (g) should apply to registrant.

V.

Accordingly, the judgment of the Appellate Division is reversed, and the matter is remanded to the trial court for determination of registrant's application.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, SOLOMON, and PIERRE-LOUIS join in JUSTICE FERNANDEZ-VINA's opinion.